No. 25-7038 and No. 25-7039

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

AMBER STEPP, *et al*.,
*Plaintiffs-Appellees*,

v.

JASON LOCKHART, *et al*.,
*Defendants-Appellants*.

AMBER STEPP, *et al*.,
*Plaintiffs-Appellees*,

v.

KEVIN MCCLAIN,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Eastern District of Oklahoma
Case No. 24-cv-00146-JAR, The Honorable Jason A. Robertson

APPELLANTS' CONSOLIDATED OPENING BRIEF

ORAL ARGUMENT REQUESTED

Frederick J. Hegenbart, OBA 10846
Adam S. Breipohl, OBA 32358
Rhiannon K. Thoreson, OBA 22748
ROSENSTEIN, FIST & RINGOLD
525 South Main, Suite 700
Tulsa, OK 74103
(918) 585-9211; Fax: (918) 583-5617
fredh@rfrlaw.com
adamb@rfrlaw.com
rthoreson@rfrlaw.com

Whitney M. Eschenheimer, OBA 17025
Jason L. Callaway, OBA 31958
JOHNSON & JONES, P.C.
Two Warren Place
6120 S. Yale Avenue, Suite 500
Tulsa, OK 74136
(918) 584-6644; Fax: (888) 789-0940
wme@johnson-jones.com
jcallaway@johnson-jones.com

1

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................. 5

**PRIOR OR RELATED APPEALS** ...................................................10

**JURISDICTIONAL STATEMENT** ...................................................11

**STATEMENT OF THE ISSUES** .......................................................13

**STATEMENT OF THE CASE** ...........................................................14

    **I.**    **McClain's Classroom.** ............................................................14

    **II.**    **The Investigation.** ..................................................................16

    **III.**    **Procedural History.** ..............................................................17

**SUMMARY OF THE ARGUMENT** ...................................................19

**ARGUMENT** ......................................................................................21

    **I.**    **Standard of Review**. ..............................................................21

    **II.**    **Law Governing Qualified Immunity**. ...................................21

    **III.**    **Appeal No. 25-7038**. ...............................................................23

        A.    *Plaintiffs Fail to Allege a Constitutional Violation by Any Individual Defendant.* ....................................................24

            i.    *Plaintiffs Improperly Rely on Group Pleading Rather Than Individualized Allegations.*............................24

            ii.    *The Alleged Facts Do Not Establish a Violation of Plaintiffs' Rights to Equal Protection.* ...................25

            iii.    *The Equal Protection Claims Are Unsupported by Allegations of Purposeful Discrimination.*............28

       *iv.*   *The District Court Erred in Its Procedural Due Process Findings.*.................................................................29

   *B.*   <u>*The Individual Defendants Did Not Violate Clearly Established Law.*</u>.......................................................30

       *i.*   *No Clearly Established Law Prohibited the Initial, Temporary Classroom Configuration.* ..................34

       *ii.*   *There Is No Clearly Established Right to a Particular Teacher or Investigative Outcome.* ........................36

       *iii.*   *Clearly Established Law Was Not Violated by Any Defendant.* .............................................................37

          1.   <u>Jason Lockhart (Superintendent)</u>.......................38

          2.   <u>Kathy Anderson (Principal)</u> ....................... 38-39

          3.   <u>Bill Blair (Title IX Investigator)</u> ................ 39-40

          4.   <u>Tracy Bryant (Co-Investigator)</u> ........................40

          5.   <u>School Board Members (Russell, Woods, Crank, Blue, Moreland)</u> ....................................... 40-41

       *iv.*   *The District Court Failed to Address Qualified Immunity as to the Conspiracy Claims.*.................................41

**IV.**   <u>**Appeal No. 25-7039.**</u> ..............................................42

   *A.*   <u>*McClain's Actions as Pled in the Second Amended Complaint Do Not Meet the 'Shocks the Conscience' Standard.*</u>...................42

       *i.*   *Substantive Due Process Claims Involving Teachers Require More than What Plaintiffs Have Alleged.*..................43

       *ii.*   *At Minimum, the Law Had Not Clearly Established that McClain's Alleged Actions Violated Substantive Due Process.* ..........................................................46

B.    *Plaintiffs Did Not Adequately Plead an Equal Protection Violation.* ...................................................................47

    i.    *McClain Does Not Contest the District Court's Ruling as to the Severe or Pervasive Element of Plaintiffs' Claim.* ..................................................49

    ii.    *This Court Should Not Permit a Hostile Environment. Harassment Claim to Proceed Absent Knowledge of the Gender-Based Aspect of the Defendant's Actions.* ...............50

    iii.    *The Unusual Facts of this Case Render the Law Far from Clearly Established.* ......................................................50

**CONCLUSION** .................................................................51

**STATEMENT OF COUNSEL AS TO ORAL ARGUMENT** ............................53

**CERTIFICATE OF COMPLIANCE** ...................................54

**CERITIFICATE OF DIGITAL SUBMISSION** ...................................55

**CERTIFICATE OF SERVICE** ...........................................56

**ATTACHMENTS** ................................................................57

## TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19,
77 F.3d 1253 (10th Cir. 1996) ...............................................................44, 45, 46, 47

Aldaba v. Pickens, 844 F.3d 870 (10th Cir. 2016) ..................................................32

Anderson v. Creighton, 483 U.S. 635 (1987) ...........................................................31

Apodaca v. Raemisch, 864 F.3d 1071 (10th Cir. 2017) ....................................22, 30

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..............................................................22, 38

Archuleta v. Wagner, 523 F.3d 1278 (10th Cir. 2008) .............................................22

Becker v. Kroll, 494 F.3d 904 (10th Cir. 2007) ................................................42, 43

Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397 (1997)...................26

Bridges ex rel. D.B. v. Scranton Sch. Dist., 644 Fed. Appx. 172
(3d Cir. 2016) ...........................................................................................................45

Brown v. Montoya, 662 F.3d 1152 (10th Cir. 2011)........................................29, 40

Butler v. Rio Rancho Pub. Sch. Bd. of Ed., 341 F.3d 1197 (10th Cir. 2003) .........42

Casey v. City of Fed. Heights, 509 F.3d 1278 (10th Cir. 2007).............................32

Chavez v. New Mexico, 397 F.3d 826 (10th Cir. 2005) .........................................50

City of Escondido v. Emmons, 586 U.S. 38 (2019) ..........................................33, 36

Collins v. City of Harker Heights Tex., 503 U.S. 115 (1992)........................... 42-43

Costello v. Mitchell Pub. Sch. Dist. 79, 266 F.3d 916 (8th Cir. 2001) .............44, 45

Couture v. Bd. of Educ. of Albuquerque Pub. Schs., 535 F.3d 1243
(10th Cir. 2008)........................................................................................................29

Cox v. Glanz, 800 F.3d 1231 (10th Cir. 2015)........................................................47

Creamer v. Laidlaw Transit, Inc., 86 F.3d 167 (10th Cir. 1996).............................49

Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629 (1999)....................................27

District of Columbia v. Wesby, 583 U.S. 48 (2018)  ................................................51

Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010) ............................................25

Doe ex rel. Doe v. Detroit Pub. Sch. Cmty. Dist., CV 21-11136,
2022 WL 989331 (E.D. Mich. Mar. 31, 2022) ........................................................45

Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211 (5th Cir. 1998) ...............................26

Doe v. Gooden, 214 F.3d 952 (8th Cir. 2000) ............................................. 36, 44-45

Doe v. Hutchinson, 728 F. App'x 829 (10th Cir. 2018) ..........................................48

Doe v. Woodard, 912 F.3d 1278 (10th Cir. 2019) ...................................................43

Doe v. Wood Cnty. Bd. of Educ., 888 F. Supp. 2d 771 (S.D.W. Va. 2012)...........35

Ebonie S. v. Pueblo School Dist. 60, 695 F.3d 1051 (10th Cir. 2012)  .............41, 43

Escue v. N. OK Coll., 450 F.3d 1146 (10th Cir. 2006)  ..........................................48

Estate of Reat v. Rodriguez, 824 F.3d 960 (10th Cir. 2016) ...................................30

Estate of Smart ex rel. Smart v. City of Wichita, 951 F.3d 1161
(10th Cir. 2020) .......................................................................................................21

Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998) ................................28

Goss v. Lopez, 419 U.S. 565 (1975)........................................................................29

Graham v. Bd. of Educ. of the City of New York, 22 F.4th 1231
(10th Cir. 2022)........................................................................................................33

Hanna v. Huer, 747 F.2d 1265 (10th Cir. 1984)................................................ 32-33

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ............................................................21

Harman v. Pollock, 586 F.3d 1254 (10th Cir. 2009) .................................................22

Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993) ......................................................49

Hernandez v. Ridley, 734 F.3d 1254 (10th Cir. 2013) ........................................42, 43

Hope v. Pelzer, 536 U.S. 730 (2002) ........................................................................33

Hovater v. Robinson, 1 F.3d 1063 (10th Cir. 1993) ..................................................26

Hunt v. Montano, 39 F.4th 1270 (10th Cir. 2022) ...............................................45, 47

Jojola v. Chavez, 55 F.3d 488 (10th Cir.1995) .........................................................26

Kerns v. Bader, 663 F.3d 1173 (10th Cir. 2011) ......................................................32

L. H. v. Pittston Area Sch. Dist., 666 Fed. Appx. 213 (3d Cir. 2016) ...................45

Lipsett v. Univ. of P.R., 864 F.2d 881 (1st Cir. 1988) ..............................................48

Lowe v. Raemisch, 864 F.3d 1205 (10th Cir. 2017) .................................................32

Lybrook v. Members of Farmington Mun. Schools Bd., 232 F. 3d 1334
(10th Cir. 2000) .........................................................................................................31

Luethje v. Kyle, 131 F.4th 1179 (10th Cir. 2025) .....................................................21

Malley v. Briggs, 475 U.S. 335 (1986) .....................................................................22

Martinez v. Carr, 479 F.3d 1292 (10th Cir. 2007) ...................................................30

McBeth v. Himes, 598 F.3d 708 (10th Cir. 2010) .....................................................40

Miss. Univ. for Women v. Hogan, 458 U.S. 718 (1982) ...........................................34

Moore v. Guthrie, 438 F.3d 1036 (10th Cir. 2006) ...................................................43

Moya v. Garcia, 895 F. 3d 1229 (10th Cir. 2018) ....................................................25

Mullenix v. Luna, 577 U.S. 7 (2015) ............................................ 22, 31-32, 33, 34

Murrell v. School Dist. No. 1, Denver, Colorado, 186 F. 3d 1238
(10th Cir. 1999) ....................................................................................26

O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093 (10th Cir. 1999) ...................50

Pahls v. Thomas, 718 F.3d 1210 (10th Cir. 2013)...................................... 24-25, 40

Pearson v. Callahan, 555 U.S. 223 (2009)................................................................24

Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257 (10th Cir. 1998) .........50

Perea v. Baca, 817 F.3d 1198 (10th Cir. 2016) ......................................................21

Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256 (1979)...........................................28

Petrella v. Brownback, 787 F.3d 1242 (10th Cir. 2015) ........................................42

Porter v. Ponca City Indep. Sch. Dist., No. CIV-21-00612-PRW,
2025 WL 1586387 (W.D. Okla. June 4, 2025) ........................................27

PJ ex rel. Jensen v. Wagner, 603 F.3d 1182 (10th Cir. 2010) .....................22, 47, 51

Redmond v. Crowther, 882 F.3d 927 (10th Cir. 2018) ...........................................22

Rochin v. California, 342 U.S. 165 (1952) ..............................................................44

Romero v. U.S., 658 Fed. Appx. 376 (10th Cir. 2016)............................................33

Ruiz v. McDonnell, 299 F.3d 1173 (10th Cir. 2002) ..............................................43

San Antonio Indep. Sch. Dist. V. Rodriguez, 411 U.S. 1 (1973) ............................42

Saucier v. Katz, 533 U.S. 194 (2001) .....................................................................23

Seegmiller v. LaVerkin City, 528 F.3d 762 (10th Cir. 2008) ............................42, 43

Shepherd v. Robbins, 55 F.4th 810 (10th Cir. 2022) ..................................22, 47, 51

Shero v. City of Grove, 510 F.3d 1196 (10th Cir. 2007).............................. 24, 38-39

Swanson v. Guthrie Indep. Sch. Dist. No. I-L, 135 F.3d 694 (10th Cir. 1998).......29

Thomas v. Kaven, 765 F.3d 1183 (10th Cir. 2014) ...............................20, 22, 45, 46

Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504 (10th Cir. 1998) ..21, 39, 41, 43

Totty v. Indep. Sch. Dist. No. I-009 of Blaine Cnty. Okla.,
Case No. CV-08-572-F, 2010 WL 11606954 (W.D. Okla. Apr. 14, 2010) .............45

Truman v. Orem City, 1 F.4th 1227 (10th Cir. 2021)................................................20

Uhlrig v. Harder, 64 F.3 567 (10th Cir. 1995) ....................................................42, 43

United States v. Virginia, 518 U.S. 515 (1996).........................................................35

Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646 (1995).........................................35

Villanueva v. Carere, 85 F.3d 481 (10th Cir. 1996) .................................................42

White v. Pauly, 580 U.S. 73 (2017) ...................................................................22, 36

Whitley v. Indep. Sch. Dist. No. 10 of Dewey Cnty., Okla.,
No. CIV-18-331-SLP, 2019 WL 7667329 (W.D. Okla. Apr. 22, 2019)............. 27-28

Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079 (10th Cir. 2007) ...................49

Woodward v. City of Worland, 977 F.2d 1392 (10th Cir.1992)...............................26

## PRIOR OR RELATED APPEALS

There are no prior appeals. The two appeals consolidated here, Appeal Nos. 25-7038 and 25-7039, are related.

## **JURISDICTIONAL STATEMENT**

The District Court exercised federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiffs-Appellees' Second Amended Complaint, the operative pleading, asserted certain claims arising under the Constitution and the laws of the United States. The District Court exercised supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367.

The District Court issued an Opinion and Order on April 17, 2025 granting in part and denying in part Defendant-Appellant McClain's Motion to Dismiss. The District Court's Opinion and Order denied Defendant-Appellant McClain's argument that he was entitled to qualified immunity as to specific claims. Defendant/Appellant McClain filed a Notice of Appeal on May 14, 2025, which was timely pursuant to Fed. R. App. P. 4(a)(1)(A).

The District Court issued an Opinion and Order on April 29, 2025 granting in part and denying in part the Motion to Dismiss filed by Defendants-Appellants Lockhart, Russell, Woods, Crank, Blue, Moreland, Anderson, Blain, and Bryant. The District Court's Opinion and Order denied Defendants-Appellants' argument that they were entitled to qualified immunity as to specific claims. Defendants-Appellants filed a Notice of Appeal on May 13, 2025, which was timely pursuant to Fed. R. App. P. 4(a)(1)(A).

This Court has jurisdiction to hear these consolidated appeals pursuant to 28 U.S.C. § 1291, which grants jurisdiction over final decisions of district courts, and Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), which holds that the denial of a claim of qualified immunity that turns on an issue of law is a final decision for purposes of § 1291. The Defendants-Appellants seek review only of those portions of the District Court's Opinions and Orders denying qualified immunity.

## <u>STATEMENT OF THE ISSUES</u>

<u>Appeal No. 25-7038</u>

- Whether the District Court erred in holding that the alleged conduct of the Defendants-Appellants would constitute a violation of Plaintiffs'-Appellees' constitutional rights.

- Whether the District Court erred in holding that the alleged conduct of the Defendants-Appellants would be in violation of clearly established law at the time of the events giving rise to this case.

<u>Appeal No. 25-7039</u>

- Whether the District Court erred in holding that Defendant-Appellant McClain's conduct violated J.S.'s constitutional right to substantive due process.

- Whether the District Court erred in holding that Defendant-Appellant McClain's conduct violated J.S.'s constitutional right to equal protection.

- Whether the District Court erred in holding that the law was clearly established that Defendant-Appellant McClain's conduct violated J.S.'s constitutional rights.

## STATEMENT OF THE CASE

Plaintiffs-Appellees Amber and Jonathan Stepp ("Plaintiffs") are the parents of J.S., a minor child who attended elementary school in the Talihina Public School District ("TPSD") at the beginning of the 2022-2023 academic year. [App. Vol. I at 28 (¶ 1), 32 (¶ 22)]. Defendants-Appellants Lockhart, Russell, Woods, Crank, Blue, and Moreland were TPSD's elected School Board of Education, with Lockhart also serving as TPSD's Superintendent. [App. Vol. I at 28-29 (¶¶ 3, 6)]. Defendant-Appellant Anderson was the principal of Talihina Elementary School, and Defendants-Appellants Blair and Bryant were instructors and Title IX Officers of Talihina Elementary School. [App. Vol. I at 30-31 (¶¶ 12, 14, 15)]. Defendant-Appellant Kevin McClain ("McClain") was a teacher at Talihina Elementary School. [App. Vol. I at 30 (¶ 13)].

### I.    McClain's Classroom

Prior to the school year beginning, TPSD implemented class assignments which divided the fifth-grade class by sex. [App. Vol. I at 31 (¶ 21)]. McClain was assigned to teach the fifth-grade class for boys, and J.S. was one of his students. [App. Vol. I at 33 (¶¶ 32-33)]. According to Plaintiff's Second Amended Complaint, the operative pleading, McClain then behaved as follows:

   a.   During the first week of school, McClain "frequently and loudly yelled" at the class in general and J.S. specifically. [App. Vol. I at 33 (¶ 34)].

b. McClain "increasingly singled out J.S. for repeated and excessive discipline." [App. Vol. I at 33 (¶ 36)].

c. On August 22, 2022, McClain yelled at J.S. and another student in a "loud and violent manner" such that the two students were "reduced to tears." [App. Vol. I at 33-34 (¶ 37)].

d. On August 24, 2022, McClain screamed and/or berated J.S. until J.S. cried. [App. Vol. I at 34 (¶ 38)].

e. McClain refused to allow J.S. to go to the office or call his father when he felt ill on one occasion, although he allowed another student to leave the classroom. [App. Vol. I at 34 (¶ 39)].

f. At some point during the second week of class, McClain discussed the topics of kissing and drawings of genitals with the class and told the class "not to draw male genitals because J.S. is 'queer.'" [App. Vol. I at 35 (¶ 44)].

g. On or around the same date, McClain instructed his students, who were roughhousing, to "yell 'f** alert!' any time that another boy unwantedly touched them." [App. Vol. I at 35 (¶ 45)].

Plaintiffs further allege that J.S. was unaware of the meaning of the gender-specific terms McClain had used until his parents explained them to him. [App. Vol. I at 36 (¶¶ 51-52)]. J.S. was removed from McClain's classroom on August 29, 2022,

thirteen days after the school year began. [App. Vol. I at 33 (¶ 34), 43 (¶ 94)]. There are no allegations that McClain thereafter acted inappropriately towards J.S.

## II.     <u>The Investigation</u>

On or about August 29, 2022, the Stepps met with Principal Jason Lockhart to report McClain's behavior. [App. Vol. 1 at 38, ¶ 66]. In the following weeks, they submitted a Title IX complaint and continued to raise concerns with various school officials, including Assistant Superintendent Kathy Anderson, Superintendent Bill Blair, and multiple members of the Talihina Board of Education. [App. Vol. 1 at 38-40, 44-46, ¶¶ 68–70, 81–83, 106–107, 113–116].

Plaintiffs allege that, rather than addressing their concerns in the manner they wished, school officials failed to conduct an adequate investigation, dismissed or minimized the complaints, and retaliated against J.S. and his family. [App. Vol. 1 at 45, 50-52, ¶¶ 108–112, 138–150]. Specific retaliatory acts alleged include critical remarks by administrators, isolating J.S. during class, denying him accommodations, and refusing to place him with his prior teacher. [App. Vol. 1 at 52-53, ¶¶ 151–159].

While the investigation was pending, the School District allegedly offered to place J.S. in the other fifth grade classroom, which was refused by Plaintiffs. [App. Vol. 1 at 43, ¶ 99]. After Plaintiffs' refusal, the School District placed J.S. in a modified school schedule wherein he attended a period of classroom instruction and would work independently in the school library [<u>Id</u>. at ¶ 100].

Eventually, Plaintiffs withdrew J.S. from Talihina Public Schools on October 17, 2022. [App. Vol. 1 at 44, ¶ 105].

The individual defendants named in their individual capacities include Principal Jason Lockhart; Superintendent Bill Blair; Assistant Superintendent Kathy Anderson; and School Board members Courtney Moreland, Steve Woods, Rusty Blue, Tracy Bryant, Leslie Crank, and Scottie Russell. Plaintiffs generally allege that these individuals were aware of and approved of the sex-segregated classroom assignments, failed to intervene after receiving complaints, and in some cases made hostile statements or participated in retaliatory conduct. [App. Vol. 1 at 31-32, 46, 50-52, ¶¶ 21–27, 116, 138–150].

### III.    <u>Procedural History</u>

Plaintiffs filed their original Complaint on April 23, 2024. [App. Vol. I at 12.] Following an invitation from the District Court, [App. Vol. I at 21 (Dkt. No. 86)], Plaintiffs filed their Second Amended Complaint on December 5, 2024. [App. Vol. I at 22; <u>see also</u> App. Vol. I at 27]. In the Second Amended Complaint, Plaintiffs asserted a wide variety of federal and state-law claims against TPSD and the various individual defendants. <u>See generally</u> [App. Vol. I at 56-83]. TPSD and most individual defendants filed a single motion to dismiss, [App. Vol. I at 154], while McClain filed a separate motion to dismiss. [App. Vol. I at 202].

As to McClain's motion, on April 17, 2025, the District Court issued an Opinion and Order granting the motion in part and denying it in part. [See generally App. Vol. II at 4-33]. The District Court specifically denied McClain's request for qualified immunity on Plaintiffs' substantive due process and equal protection claims. [App. Vol. II at 19, 22.].

The District Court issued its Opinion and Order regarding the remaining defendants' motion to dismiss on April 29, again granting in part and denying in part. [App. Vol. II at 34-84]. The District Court specifically denied qualified immunity to: Anderson and Lockhart on Plaintiff's equal protection claim related to implementation of the alleged segregation policy; Blue, Crank, Lockhart, Moreland, Russell, and Woods on Plaintiff's equal protection claim as members of TPSD's School Board; Anderson, Blue, Crank, Lockhart, Moreland, Russell, and Woods on Plaintiffs' procedural due process claim; Anderson, Blair, and Bryant on Plaintiffs' § 1983 retaliation claim; Blue, Crank, Lockhart, Moreland, Russell, and Woods on Plaintiffs' separate § 1983 retaliation claim; Anderson, Lockhart, Russell, Blue, Crank, Moreland, and Woods on Plaintiffs' § 1983 conspiracy claim. [App. Vol. II at 30, 32, 33, 35, 36, 38-39].

Lockhart, Russell, Woods, Crank, Blue, Moreland, Anderson, Blair, and Bryant filed their Notice of Appeal on May 13, 2025, [App. Vol. II at 85], and McClain filed his Notice of Appeal on May 14, 2025. [App. Vol. II at 88].

# SUMMARY OF THE ARGUMENT

## Appeal No. 25-7038

The District Court erred in denying the individual Defendants' motion to dismiss on qualified immunity grounds. Defendants submit that the court erred in concluding Plaintiffs pled sufficient facts to reasonably infer that any individual Defendants' acts or omissions constituted a constitutional violation. Moreover, Defendants submit the court erred in concluding that even if a violation was assumed, under the facts and circumstances herein, clearly established law did not prohibit the individual Defendants' actions.

## Appeal No. 25-7039

The District Court erred in failing to dismiss Plaintiffs' substantive due process and equal protection claims against McClain, as McClain was entitled to qualified immunity on both claims.

The allegations in Plaintiffs' Second Amended Complaint fall well short of what this Court and other appellate and district courts have found to "shock the conscience" in factually similar cases. Thus, the allegations do not plead a substantive due process claim in the first instance. Even if the allegations were sufficient, however, the District Court should nevertheless have granted qualified immunity as the lack of applicable legal authority that would support a constitutional violation renders the law not clearly established on the issue.

As to Plaintiff's equal protection claim, the District Court failed to address one of McClain's two arguments for dismissal, namely J.S.'s lack of understanding. Case law in related contexts holds that hostile environment harassment claims can proceed only where there is awareness of gender-discriminatory conduct. J.S. did not perceive McClain's alleged statements as gender-discriminatory, and hostile environment harassment claims cannot be based on gender-neutral conduct. At minimum, this case presents a fact pattern so unusual that the law on this point is not clearly established, and so qualified immunity should have been granted even if Plaintiff's allegations were sufficient to state a constitutional violation.

## **ARGUMENT**

### **I.    Standard of Review.**

A District Court's denial of a motion to dismiss based on qualified immunity is reviewed de novo. Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998). Qualified immunity defenses are more typical at the summary judgment stage, but they may be resolved at the pleading stage. Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014). In reviewing denial of a motion to dismiss, this Court must accept all well-pleaded allegations in the operative pleading as true and analyze the defendant's actions as alleged. Luethje v. Kyle, 131 F.4th 1179, 1187 (10th Cir. 2025) (citing Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021); Thomas, 765 F.3d at 1194).

### **II.    Law Governing Qualified Immunity.**

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "When a § 1983 defendant asserts qualified immunity, this affirmative defense 'creates a presumption that [the defendant is] immune from suit.'" Estate of Smart ex rel. Smart v. City of Wichita, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting Perea v. Baca, 817 F.3d 1198, 1202 (10th Cir. 2016)).

"[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Mullenix v. Luna</u>, 577 U.S. 7, 12 (2015) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). "Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'" <u>Thomas v. Kaven</u>, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting <u>Archuleta v. Wagner</u>, 523 F.3d 1278, 1283 (10th Cir. 2008)).

"Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent particularized to the case at issue exists. Materially similar facts can make the precedent sufficiently particularized." <u>Shepherd v. Robbins</u>, 55 F.4th 810, 815 (10th Cir. 2022) (citing <u>Apodaca v. Raemisch</u>, 864 F.3d 1071, 1076 (10th Cir. 2017)). While there "need not be a case precisely on point," <u>Redmond v. Crowther</u>, 882 F.3d 927, 935 (10th Cir. 2018), it is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" <u>White v. Pauly</u>, 580 U.S. 73, 79 (2017) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011)). Alternatively, a constitutional right may be clearly established "if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains." <u>PJ ex rel. Jensen v. Wagner</u>, 603 F.3d 1182, 1197 (10th Cir. 2010) (quoting <u>Harman v. Pollock</u>, 586 F.3d 1254, 1260 (10th Cir. 2009)). "The

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

### III.    Appeal No. 25-7038.

The district court erred in denying qualified immunity to the individual defendants by improperly conflating group awareness with personal participation, misapplying the deliberate indifference standard, and relying on general principles of law that do not clearly establish constitutional violations under the facts alleged.

Although the court accepted Plaintiffs' narrative wholesale at the motion to dismiss stage, it failed to conduct the proper two-prong qualified immunity analysis as to each individual defendant. Specifically, the court found that Defendants Lockhart and Anderson were aware of McClain's conduct and did not intervene. But mere awareness and administrative involvement in a Title IX investigation do not equate to a violation of the Equal Protection Clause, Due Process, or clearly established Title IX-related retaliation law.

The court also concluded that Defendants Blair and Bryant, as Title IX investigators, acted unreasonably. However, neither the district court nor Plaintiffs cite to authority suggesting that failure to conduct interviews in a school disciplinary investigation constitutes a violation of a clearly established constitutional right.

The court found that Defendant Anderson's alleged disclosure of Plaintiffs'

identities and Defendant Blair's alleged statements at a basketball game were sufficient to plead retaliation. But these are isolated verbal encounters, not actions that would chill a person of ordinary firmness under Shero v. City of Grove, 510 F.3d 1196 (10th Cir. 2007).

> A.    *Plaintiffs Fail to Allege a Constitutional Violation by Any Individual Defendant.*

Qualified immunity shields public officials from suit unless a plaintiff can establish that: (1) the official violated a constitutional right; and (2) the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The threshold question is whether any individual defendant violated a constitutional right at all. Plaintiffs have failed to meet this burden.

The Second Amended Complaint is replete with generalized and conclusory allegations, but it lacks specific factual content showing that any individual defendant personally committed conduct that violated J.S.'s constitutional rights. This defect is fatal to their claims.

> i.    *Plaintiffs Improperly Rely on Group Pleading Rather Than Individualized Allegations.*

Throughout the Second Amended Complaint, Plaintiffs fail to differentiate among the individual defendants. Nearly every paragraph refers to them collectively as "Defendants" or "Board Members," without identifying what any specific person did. Courts routinely reject such "group pleading." See Pahls v. Thomas, 718 F.3d

1210, 1225 (10th Cir. 2013) (to state a claim in federal court, a complaint must explain what each defendant did to him or her).

Without factual allegations that identify each individual's personal participation in unlawful conduct, Plaintiffs cannot proceed under § 1983. The lack of individualized pleading requires dismissal of all constitutional claims against the individual defendants.

> ii. *The Alleged Facts Do Not Establish a Violation of Plaintiffs' Rights to Equal Protection.*

The first prong of Plaintiffs' burden requires them to establish that they suffered a violation of their rights protected by the Fourteenth Amendment. There are two questions at the first step of the qualified immunity analysis:

1. Whether the plaintiff has adequately alleged the violation of a constitutional or statutory right, and;

2. Whether the defendant's alleged conduct deprived the plaintiff of that right.

Moya v. Garcia, 895 F. 3d 1229, 1232 (10th Cir. 2018) (citing Dodds v. Richardson, 614 F.3d 1185, 1192-94 (10th Cir. 2010)). The District Court failed to dismiss Plaintiffs' Section 1983 claims against the defendants on equal protection and procedural due process grounds. The District Court erred in denying qualified immunity to the individual defendants because Plaintiffs failed to allege conduct on the part of the defendants that would constitute deliberate indifference to known sexual harassment.

Deliberate indifference is a well-known concept that has been defined in the context of claims under both Section 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"). This Court has held that Section 1983 claims, including those requiring a showing of deliberate indifference, "must be predicated upon a **'deliberate' deprivation** of constitutional rights by the defendant[.]" Murrell v. School Dist. No. 1, Denver, Colorado, 186 F. 3d 1238, 1250 (10th Cir. 1999) (quoting Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir.1992)) (emphasis added). This requires a plaintiff to allege that the "defendant[] actually **knew of and acquiesced in**" the alleged sexual harassment. Id. at 1251 (quoting Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir.1995) (emphasis added).

In Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997), the Supreme Court stated that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a **known or obvious consequence** of his action." Id. at 410 (emphasis added). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference[.]" Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998). Deliberate indifference requires "a higher degree of fault than negligence, or even gross negligence." Hovater v. Robinson, 1 F.3d 1063, 1066 (10th Cir. 1993). The United States Supreme Court has very explicitly stated that the "deliberate

indifference standard "is **not a mere 'reasonableness' standard.**" <u>Davis v. Monroe</u> <u>Cnty. Bd. of Educ.</u>, 526 U.S. 629, 648 (1999) (discussing deliberate indifference in the context of a Title IX claim) (emphasis added).

An example of the type of conduct which has been held to be a deliberately indifferent response to sexual harassment is presented by <u>Murrell</u> itself. In that case, the minor plaintiff was a developmentally and physically disabled student who asserted that she was repeatedly harassed and sexually assaulted by another student. 186 F.3d at 1243. She alleged that the school principal and two teachers actively attempted to cover up the ongoing harassment by the same student, telling the assaulted student not to report the assault to her parents, and declined to investigate the ongoing series of incidents after several reports from the student's mother. <u>Id</u>. at 1243-44. This Court held that such conduct on the part of the individual school officials would amount to deliberate indifference. <u>Id</u>. at 1251-52.

In a recent district court case looking at the same issue, the Western District of Oklahoma recognized that "a school 'district's failure to comply with its regulations does not establish the requisite deliberate indifference' under Title IX. And to enforce Title IX's regulatory protections through Section 1983, [plaintiff] must still point to a right secured by Title IX." <u>Porter v. Ponca City Indep. Sch. Dist.</u>, No. CIV-21-00612-PRW, 2025 WL 1586387, at *10 (W.D. Okla. June 4, 2025) (quoting <u>Whitley v. Indep. Sch. Dist. No. 10 of Dewey Cnty., Okla.</u>, No. CIV-18-

331-SLP, 2019 WL 7667329, at *8 (W.D. Okla. Apr. 22, 2019) and citing <u>Gebser v. Lago Vista Indep. Sch. Dist</u>., 524 U.S. 274, 292 (1998))

The District Court failed to address this deliberate indifference standard. The effect of this error was to transform the deliberate indifference standard, which requires liability "be predicated upon a 'deliberate' deprivation of constitutional rights," <u>Murrell,</u> 186 F. 3d at 1250, into a "reasonableness"—i.e., negligence—standard.

### iii. *The Equal Protection Claims Are Unsupported by Allegations of Purposeful Discrimination.*

To state a claim for an Equal Protection violation, Plaintiffs must allege that the defendants intentionally discriminated against J.S. based on his sex. <u>See</u> <u>Pers. Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 279 (1979). Yet the Second Amended Complaint fails to allege that any defendant acted with discriminatory intent or treated J.S. differently because of his sex.

Plaintiffs assert that separating boys and girls into different classrooms was discriminatory, but they admit the policy applied equally to both sexes. [App. Vol. 1 at 33, ¶¶ 30–32]. They also allege that J.S. was "singled out" by McClain for harsh treatment but do not allege that McClain treated all male students similarly, or that school officials directed or approved of this treatment with discriminatory intent. [*Id.* at ¶ 36].

General allegations that defendants "approved" the policy or were aware of its effects are not enough. [App. Vol. 1 at 32, ¶ 23]. <u>Brown v. Montoya,</u> 662 F.3d 1152, 1163 (10th Cir. 2011) (liability requires "personal involvement" and intent to discriminate).

> iv.    *The District Court Erred in Its Procedural Due Process Findings.*

To state a procedural due process claim, Plaintiffs must allege that J.S. was deprived of a constitutionally protected liberty or property interest and that he was not afforded appropriate process. <u>Couture v. Bd. of Educ. of Albuquerque Pub. Schs.</u>, 535 F.3d 1243, 1256 (10th Cir. 2008). However, the Second Amended Complaint does not identify any such deprivation. Public school students have a recognized property interest in continued enrollment, but not in specific educational placements, teacher assignments, or participation in extracurricular activities. <u>See Swanson v. Guthrie Indep. Sch. Dist. No. I-L</u>, 135 F.3d 694, 699 (10th Cir. 1998) (no constitutional right to attend public school in a particular manner).

The District Court erroneously relied on <u>Goss v. Lopez</u>, 419 U.S. 565 (1975) in finding that the individual defendants violated J.S.'s due process rights. [App. Vol. 2 at 62].  <u>Goss</u> looked at a situation where there was a complete and involuntary deprivation of education, which is not what occurred under the facts of this case. 419 U.S. at 578. Plaintiffs complain that J.S. was removed from McClain's class, placed on a modified schedule, and eventually withdrawn by his parents, but they do not

allege that the school expelled him, suspended him, or deprived him of enrollment. The school continued to offer alternative educational services, some of which Plaintiffs refused. Plaintiffs then voluntarily chose to withdraw and homeschool J.S. There is no constitutional right to a specific classroom configuration, teaching method, or individualized accommodations beyond those required by separate statutory frameworks (e.g., the IDEA), which Plaintiffs have not invoked here. See id. at 574.

>    B.    *The Individual Defendants Did Not Violate Clearly Established Law.*

Even if this Court were to assume that Plaintiffs did sufficiently allege a constitutional violation, the individual defendants are nonetheless entitled to qualified immunity because the rights purportedly violated were not "clearly established" at the time of the conduct.

"In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Martinez v. Carr, 479 F.3d 1292, 1294-95 (10th Cir. 2007). "[A] right is clearly established when a precedent involves '*materially similar conduct*' or applies 'with *obvious clarity*' to the conduct at issue." Apodaca v. Raemisch, 864 F.3d 1071, 1076 (10th Cir. 2017) (quoting Estate of Reat v. Rodriguez, 824 F.3d 960, 964-65 (10th Cir. 2016)) (emphasis original). The Supreme Court and this Court have consistently held that

the inquiry of whether law is clearly established **focuses on the specific conduct in question and not on generalities**.

In <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987), the Supreme Court pointed out that application of clearly established standard turns upon "the level of generality" at which the relevant legal rule is identified. By way of example, the Court noted that the right to due process of law is clearly established under the constitution. Yet a general allegation that a plaintiff's "due process rights" have been violated bears no relationship to the inquiry of whether the specific action at issue was objectively legally reasonable at the time it was taken. The Court concluded that the specific contours of the right alleged to have been infringed must be clear at the time the action was taken in order to defeat a claim of qualified immunity:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" **in a more particularized**, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ..., but it is to say that in the light of preexisting law the unlawfulness must be apparent.

<u>Id.</u> at 640 (citations omitted; emphasis added); <u>see also</u> <u>Lybrook v. Members of Farmington Mun. Schools Bd.</u>, 232 F. 3d 1334, 1338 (10th Cir. 2000) (applying the same rule when reversing denial of a motion to dismiss based on qualified immunity).

The Court reiterated this point more recently in <u>Mullenix v. Luna</u>, 577 U.S. 7

(2015), stating:

> "We have repeatedly told courts … not to define clearly established law at a high level of generality"…. The dispositive question is "whether the violative nature of the **particular** conduct is clearly established…. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id. at 12 (citations omitted; emphasis in the original).[1] For example, in a case dealing with a police search of a suspect's home, the Court explained that the relevant question was not "whether we all have some general privacy interest in our home," but "whether it was beyond debate in 2005 that the officers' entry and search lacked legal justification." Kerns v. Bader, 663 F.3d 1173, 1183 (10th Cir. 2011).  As this Court has emphasized, the law is not clearly established where a factual distinction between the present case and existing precedent "*might* make a constitutional difference." See id. at 1186-87 (emphasis original).

Once qualified immunity is raised, the burden shifts to the plaintiff to demonstrate that the law was clearly established at the time of the alleged misconduct. Aldaba v. Pickens, 844 F.3d 870, 877 (10th Cir. 2016); Hanna v. Huer,

---

[1] This Court has utilized a "sliding scale" to determine when law is clearly established, with conduct that is more obviously egregious requiring less specificity from prior case law to clearly establish the violation. Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007). However, more recent decisions have questioned whether the "sliding scale" approach is in conflict with recent Supreme Court decisions on qualified immunity. See Lowe v. Raemisch, 864 F.3d 1205, 1211 n.10 (10th Cir. 2017) (noting that the sliding scale approach may allow courts to improperly find a clearly established right even when a precedent is neither on point nor obviously applicable); Aldaba v. Pickens, 844 F.3d 870, 874 n.1 (10th Cir. 2016).

747 F.2d 1265, 1267 (10th Cir. 1984). Plaintiffs must point to "a Supreme Court or Tenth Circuit decision on point, or the weight of authority from other courts" showing that the right was so well established that every reasonable official would understand their conduct violated it. Graham v. Bd. of Educ. of the City of New York, 22 F.4th 1231, 1241 (10th Cir. 2022); Mullenix v. Luna, 577 U.S. 7, 11–12 (2015).

Plaintiffs did not satisfy this burden. The case law they rely on consists of broad legal principles or inapposite decisions that do not "squarely govern" the specific facts alleged here. See City of Escondido v. Emmons, 586 U.S. 38, 42 (2019).

The District Court incorrectly applied the qualified immunity analysis mandated by this Court and the Supreme Court, which provide that in conducting an inquiry into whether the conduct of a public official violates clearly established law, "it is crucial to look at precedent applying the relevant legal rule in similar factual circumstances" because "[s]uch cases give government officials the best indication of what conduct is unlawful in a given situation." Romero v. U.S., 658 Fed. Appx. 376, 381 (10th Cir. 2016) (quoting Hope v. Pelzer, 536 U.S. 730, 753 (2002)). The Supreme Court has also repeatedly stressed that courts should **not** "define clearly established law at a high level of generality" as the District Court did, but instead focus on whether the law clearly establishes that the **particular conduct of the**

**defendant** violates the plaintiff's rights. <u>Mullenix</u>, 577 US. at 12.

> *i. No Clearly Established Law Prohibited the Initial, Temporary Classroom Configuration.*

Plaintiffs allege that separating fifth-grade boys and girls into different classrooms at Talihina Elementary School violated the Equal Protection Clause. In their Response brief, Plaintiffs rely in part on <u>Mississippi University for Women v. Hogan</u>, 458 U.S. 718 (1982), but that case is factually and legally distinguishable and does not clearly establish that the classroom arrangement at issue here is unconstitutional. [App. Vol. 1 at 251].

In <u>Hogan</u>, the Supreme Court invalidated a state statute that excluded men from enrolling in a public nursing school, holding that the policy imposed a complete bar on male participation in a public higher education program and perpetuated sex-based stereotypes. <u>Id.</u> at 723–24. The holding in <u>Hogan</u> was expressly limited to the higher education context and turned on the State's failure to show that the exclusion furthered an important government interest through substantially related means. *Id*. at 724–26.

By contrast, the classroom configuration in this case involved a temporary administrative assignment of third-grade students to same-sex classrooms, all within the same public elementary school, with access to the same curriculum and comparable instruction. There is no allegation that either boys or girls were excluded from educational opportunities, denied access to resources, or subjected to inferior

treatment. Nor do Plaintiffs allege that the policy was grounded in gender stereotypes or discriminatory intent.

Further, courts have recognized that different constitutional considerations apply in the K–12 context, where states have broader authority to structure the educational environment. As the Supreme Court has explained, "Fourth Amendment rights, no less than First and Fourteenth Amendment rights, are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 655 (1995) (citation omitted). The Court emphasized the State's heightened interest in maintaining discipline, safety, and pedagogical flexibility in elementary and secondary schools. Id.

Courts have recognized that single-sex classroom groupings in public schools are not inherently unconstitutional, provided that students retain equal access to educational opportunities and are not subject to discriminatory treatment. See Doe v. Wood Cnty. Bd. of Educ., 888 F. Supp. 2d 771, 778–79 (S.D.W. Va. 2012) (upholding voluntary single-sex classes in public elementary school where both sexes had access to comparable instruction and participation was not mandatory) (citing United States v. Virginia, 518 U.S. 515 (1996).

Crucially, Plaintiffs cite no Supreme Court or Tenth Circuit precedent, and no factually similar case from *any* jurisdiction, holding that temporarily assigning

elementary students to single-sex classrooms within the same school building, with the same educational content, violates the Equal Protection Clause. Absent such precedent, Plaintiffs cannot meet their burden to show that every reasonable official would have understood this classroom configuration to be unlawful. See City of Escondido v. Emmons, 586 U.S. 38, 42 (2019); White v. Pauly, 580 U.S. 73, 79 (2017).

Because the law was not clearly established that such a classroom arrangement is unconstitutional, particularly in a K–12 setting where courts afford administrators greater latitude, the individual defendants are entitled to qualified immunity on this claim.

> ii. *There Is No Clearly Established Right to a Particular Teacher or Investigative Outcome.*

Plaintiffs contend that J.S. was harmed by being placed in McClain's classroom and that school officials should have responded more aggressively to parental complaints. [App. Vol. 1 at 33, 38-39, 44-46, ¶¶ 36, 66–70, 105–116]. But there is no clearly established constitutional right to a particular teacher, nor any authority imposing personal liability on administrators who do not take the specific remedial action a plaintiff desires.

In Doe v. Gooden, 214 F.3d 952 (8th Cir. 2000), the court considered § 1983 claims brought by students who alleged verbal abuse by a classroom teacher. The plaintiffs sued the school's principal and superintendent, asserting that they had

36

failed to intervene. The court found that the plaintiffs had not alleged sufficient facts to show the administrators' personal involvement or deliberate indifference, and it held they were entitled to qualified immunity. Id. at 955. Importantly, the court noted that no clearly established law imposed liability on administrators under the circumstances alleged.

The same is true here. The Second Amended Complaint does not allege that any named defendant personally witnessed or condoned unconstitutional conduct by McClain. Instead, the allegations against administrators center on their responses to complaints, decisions regarding classroom assignments, and communications with Plaintiffs. [*See* App. Vol. 1 at 36-37, 44-46, ¶¶ 66–70, 105–116]. Even assuming Plaintiffs disagreed with those decisions, administrative inaction or disagreement with the preferred course of discipline does not amount to a clearly established constitutional violation.

To defeat qualified immunity, Plaintiffs must identify authority placing beyond debate that a school official violates a student's constitutional rights by not removing a teacher under the circumstances alleged. They have not done so. Because there is no clearly established right requiring administrators to reassign a teacher based solely on allegations of misconduct, the individual defendants are entitled to qualified immunity on this claim.

*iii. Clearly Established Law Was Not Violated by Any Defendant.*

37

The following summary shows why none of the individual defendants violated clearly established law or personally participated in any constitutional deprivation.

### 1. Jason Lockhart (Superintendent)

The only conduct attributed to Lockhart is that he was present at meetings, approved placing a hall monitor outside McClain's room, and failed to provide formal Title IX information. None of these actions amount to a violation of clearly established constitutional law. There is no clearly established authority requiring a superintendent to remove a teacher solely upon receipt of parental complaints, particularly absent verified misconduct or legal process.

There was no citation to binding precedent holding that a superintendent who coordinates or delegates a Title IX complaint process, without personally retaliating or discriminating, is individually liable under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), makes clear that supervisory awareness alone is insufficient.

### 2. Kathy Anderson (Principal)

The district court relied heavily on Anderson's alleged disclosure of Plaintiffs' identities and her critical remarks about the Title IX complaint. Even assuming these facts are true, *verbal criticisms* or identifying a complainant do not constitute *materially adverse actions* sufficient to sustain a First Amendment or Title IX retaliation claim under clearly established law. See Shero v. City of Grove, 510

F.3d 1196, 1203 (10th Cir. 2007). Plaintiffs allege no ongoing pattern of adverse conduct, and they continued to engage in advocacy and public comment. Accordingly, the retaliation claim against Anderson fails both prongs of qualified immunity.

### 3. Bill Blair (Title IX Investigator)

Blair is alleged to have conducted a "deficient" Title IX investigation and later made verbal threats to Plaintiffs at a basketball game. However, courts have consistently held that deficient internal investigations, even if unfair or inadequate, do not amount to constitutional violations, particularly when not accompanied by disciplinary action or deprivation of rights. See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 523 (10th Cir. 1998).

The retaliation claim against Bill Blair is based solely on an alleged verbal altercation with Mr. Stepp at a school basketball game. According to the Second Amended Complaint, Blair used profanity, called the Stepps liars, and challenged Mr. Stepp to a physical confrontation. Even accepting these allegations as true, the claim fails because such isolated verbal outbursts do not constitute constitutionally cognizable retaliation. To state a First Amendment retaliation claim, Plaintiffs must allege that the defendant engaged in conduct that would deter a person of ordinary firmness from engaging in protected speech. Shero, 510 F.3d at 1203. Courts have consistently held that verbal insults, even crude or offensive ones, are insufficient to

chill protected activity or support a retaliation claim. See McBeth v. Himes, 598 F.3d 708, 719 (10th Cir. 2010) (verbal criticism by officials not materially adverse).

Moreover, Plaintiffs do not plausibly allege that Blair's alleged comments caused any adverse action against J.S. or chilled their participation in the Title IX process, especially since the event occurred after their formal complaints had been made. Nor is there any clearly established law holding that a teacher's or investigator's critical or offensive language at a public event constitutes unconstitutional retaliation. At most, the allegations describe a personal verbal dispute, not a violation of clearly established federal law. Accordingly, Blair is entitled to qualified immunity.

### 4. Tracy Bryant (Co-Investigator)

The complaint is devoid of individualized allegations against Bryant other than being listed as a co-investigator. Plaintiffs do not claim he retaliated, made public statements, or engaged in misconduct. As such, Bryant is entitled to qualified immunity under Pahls v. Thomas, 718 F.3d 1210, 1227 (10th Cir. 2013).

### 5. School Board Members (Russell, Woods, Crank, Blue, Moreland)

Plaintiffs allege only that the Board Members were "aware" of the gender-segregated classroom policy and did not act after hearing complaints. This is not sufficient to show discriminatory intent or personal participation under Equal Protection. Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011). There is no

40

plausible allegation that these individuals acted with purpose to discriminate or retaliate.

Furthermore, Plaintiffs have not identified any authority, binding or persuasive, that holds elected school board members individually liable for maintaining temporary gender-separated classrooms that offer equal educational access. As discussed in detail above, such policies are not per se unconstitutional in K–12 settings.

> ### iv. The District Court Failed to Address Qualified Immunity as to the Conspiracy Claims.

The District Court also failed to conduct any qualified immunity analysis with respect to Plaintiffs' § 1983 conspiracy claim (Count Seven), despite the fact that this claim was asserted against all individual defendants and falls squarely within the scope of their qualified immunity defense. This omission alone warrants reversal as to that count.  A plaintiff cannot defeat qualified immunity merely by alleging a conspiracy; they must plead an actual underlying constitutional violation and allege specific facts showing an agreement among the defendants to commit it. See Tonkovich, 159 F.3d at 533. Plaintiffs failed to do so. Because the conspiracy allegations are conclusory and unsupported by plausible facts, and as discussed above, because no underlying constitutional violation is adequately pled, the individual defendants are entitled to qualified immunity on Count Seven as a matter of law.

For all of these foregoing reasons, the district court's denial of qualified immunity should be reversed, and all constitutional claims against the individual defendants dismissed as a matter of law.

## IV.    Appeal No. 25-7039.

McClain appeals the District Court's denial of qualified immunity as to Plaintiffs' substantive due process and equal protection claims.

### A.    *McClain's Actions as Pled in the Second Amended Complaint Do Not Meet the 'Shocks the Conscience' Standard.*

Pleading a substantive due process violation is no simple thing. See Becker v. Kroll, 494 F.3d 904, 922 (10th Cir. 2007) ("Our cases recognize a § 1983 claim for a violation of Fourteenth Amendment substantive due process rights in the narrowest of circumstances."). "[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'"[2] Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995) (quoting Collins v.

---

[2] In addition to the "shocks the conscience" standard, substantive due process claims can be analyzed by asking if the defendant's actions violated a plaintiff's fundamental rights or liberty interests. See Seegmiller v. LaVerkin City, 528 F.3d 762, 766-69 (10th Cir. 2008). The District Court's opinion included a stray reference to J.S.'s right to a public education serving as a basis for his substantive due process claim, although the Court nevertheless applied the "shocks the conscience" standard. App. Vol. II at 18-19. Previous decisions in this circuit have declined to recognize the right to an education as fundamental. E.g. Petrella v. Brownback, 787 F.3d 1242, 1263 (10th Cir. 2015); Butler v. Rio Rancho Pub. Sch. Bd. of Ed., 341 F.3d 1197, 1200 n.3 (10th Cir. 2003) (citing San Antonio Indep. Sch. Dist. V. Rodriguez, 411 U.S. 1, 35, 37, 40 (1973)); Villanueva v. Carere, 85 F.3d 481, 488 (10th Cir. 1996). The Second Amended Complaint fails to allege facts as to McClain that could

City of Harker Heights Tex., 503 U.S. 115 (1992)). Meeting this standard requires more than negligence, Ruiz v. McDonnell, 299 F.3d 1173, 1184 (10th Cir. 2002), more than permitting an unreasonable risk to persist, see Uhlrig, 64 F.3d at 574, more even than reckless or intentional injury. Doe v. Woodard, 912 F.3d 1278, 1300 (10th Cir. 2019) (citing Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006)). Instead, a plaintiff 'must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 528 (10th Cir. 1998) (quoting Uhlrig, 64 F.3d at 574). "This standard is met in only the most extreme circumstances, typically involving some violation of physical liberty or personal physical integrity." Becker v. Kroll, 494 F.3d 904, 923 (10th Cir. 2007); cf. Hernandez v. Ridley, 734 F.3d 1254, 1261 (10th Cir. 2013) ("The behavior complained of must be egregious and outrageous.").

>   *i.  Substantive Due Process Claims Involving Teachers Require More than What Plaintiffs Have Alleged.*

Decisions from this Court as well as other circuit and district courts in the educational context ably demonstrate that Plaintiffs' allegations are not conscience-shocking.

---

implicate an alternative fundamental right, such as the right to freedom from bodily restraint. Cf. Ebonie S. v. Pueblo School Dist. 60, 695 F.3d 1051 (10th Cir. 2012) (recognizing freedom from bodily restraint as a fundamental right in the context of an equal protection claim). Accordingly, a fundamental rights analysis is inapposite here. Cf. Seegmiller, 528 F.3d at 769 ("Of course, if one strand is wholly inapt, then a court need not waste much time analyzing the claim under that framework.").

The Court need look no further than <u>Abeyta v. Chama Valley Indep. Sch. Dist., No. 19</u>, 77 F.3d 1253 (10th Cir. 1996). The plaintiff in <u>Abeyta</u> asserted a substantive due process claim after her teacher 1) called her a prostitute in class, leading classmates to taunt her outside of class, and 2) continued to refer to her as a prostitute for more than a month. <u>Id.</u> at 1255. Even while agreeing that the teacher's conduct "certainly was harassing" and "directly inflicted emotional harm on plaintiff," this Court concluded that the verbal harassment was insufficient to state a constitutional violation. <u>Id.</u> at 1256. The <u>Abeyta</u> Court, though unwilling to categorically reject psychological abuse as the sole basis for a substantive due process claim, implied that such abuse would need to be "so severe that it would amount to torture equal to or greater than the stomach pumping abuse condemned in [<u>Rochin v. California</u>, 342 U.S. 165 (1952)]." <u>Id.</u> at 1258. The <u>Abeyta</u> Court ultimately held that the plaintiff's allegations, flagrant as they were, were not conscience-shocking. <u>Id.</u>

<u>Abeyta</u> is not an aberration. The Eighth Circuit concluded that a teacher's repeated insults in front of a student's classmates, coupled with hitting the student in the face with a notebook, did not shock the conscience. <u>Costello v. Mitchell Pub. Sch. Dist. 79</u>, 266 F.3d 916, 921 (8th Cir. 2001). Another panel of the Eighth Circuit reached a similar conclusion in a case where an elementary school teacher used "inappropriate" and "patently offensive" language in the classroom and made "demeaning and belittling references to his students." <u>Doe v. Gooden</u>, 214 F.3d 952,

955 (8th Cir. 2000). The Third Circuit, in two recent unpublished cases, found no substantive due process violation in a case involving an eighth-grader who was repeatedly insulted (including insinuations that he suffered from Tourette's Syndrome), L. H. v. Pittston Area Sch. Dist., 666 Fed. App'x 213, 217 (3d Cir. 2016), and again when presented with allegations of verbal abuse and bullying of a second-grader. Bridges ex rel. D.B. v. Scranton Sch. Dist., 644 Fed. App'x 172, 178 (3d Cir. 2016). Numerous district courts both in and out of this circuit have reached similar conclusions on analogous facts. See, e.g., Doe ex rel. Doe v. Detroit Pub. Sch. Cmty. Dist., CV 21-11136, 2022 WL 989331, at *6 (E.D. Mich. Mar. 31, 2022) (collecting cases); see also Totty v. Indep. Sch. Dist. No. I-009 of Blaine Cnty. Okla., Case No. CV-08-572-F, 2010 WL 11606954, at *8 (W.D. Okla. Apr. 14, 2010).

The allegations here are directly comparable to the misdeeds at issue in cases like Abeyta, Costello, Doe, L.H., and Bridges. According to the Second Amended Complaint, McClain: 1) "frequently and loudly yelled" at his class and at J.S. specifically, [App. Vol. I at 33 (¶ 34)], 2) on two occasions yelled at J.S. to the point that J.S. cried, [App. Vol. I at 33-34 (¶¶ 37-38)], 3) singled J.S. out for unspecified discipline, [App. Vol. I at 33 (¶ 36)], 4) refused to allow J.S. to go to the office or call his father on one occasion, [App. Vol. I at 34 (¶ 39)], 5) discussed kissing and drawings of genitals with the class and referred to J.S. as "queer," [App. Vol. I at 35 (¶ 44)], and 6) instructed roughhousing students to "yell 'f** alert!' any time that

another boy unwantedly touched them." [App. Vol. I at 35 (¶ 45)]. These allegations are not "so severe that [they] would amount to torture," the level of verbal abuse the <u>Abeyta</u> Court implied was necessary to assert a substantive due process claim. 77 F.3d at 1258. Plaintiffs' allegations are no different than those in the cases cited above, and so the District Court should have concluded that there was no substantive due process violation in the first instance.

However, the District Court did not grapple with these authorities. Instead, the lower court referenced the "shocks the conscience" standard generally as discussed in <u>Abeyta</u> and then, without further discussion, found the standard met here. [App. Vol. II at 18-19]. Neither the court below nor Plaintiffs in their briefing distinguished the facts here from <u>Abeyta</u> or addressed the numerous other authorities that McClain presented. [App. Vol. II at 18-19; <u>see also</u> App. Vol. I at 251-52]. This was error and warrants reversal.

> ### ii. At Minimum, the Law Had Not Clearly Established that McClain's Alleged Actions Violated Substantive Due Process.

Compounding this error was the District Court's missing analysis on the second qualified immunity prong, whether the alleged substantive due process violation was "clearly established." <u>Thomas v. Kaven</u>, 765 F.3d 1183, 1194 (10th Cir. 2014). Following its conclusion that Plaintiffs had alleged a substantive due process violation, the court below simply held that McClain was not entitled to qualified immunity. [App. Vol. II at 19.] In doing so, the District Court appears to

have treated the two prongs of the qualified immunity analysis as an 'either-or' situation, where meeting one prong was sufficient to decide the entire question. However, this Court's precedent holds that a defendant is entitled to qualified immunity unless the plaintiff can satisfy **both** prongs of the analysis. See Hunt v. Montano, 39 F.4th 1270, 1284 (10th Cir. 2022) (citing Cox v. Glanz, 800 F.3d 1231, 1245 (10th Cir. 2015)).

As said above, a plaintiff can meet the "clearly established" prong either by identifying "Tenth Circuit or Supreme Court precedent particularized to the case at issue," Shepherd v. Robbins, 55 F.4th 810, 815 (10th Cir. 2022), or by demonstrating that "the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains." PJ ex rel. Jensen v. Wagner, 603 F.3d 1182, 1197 (10th Cir. 2010). Plaintiffs here can do neither. McClain is unaware of any Supreme Court precedent with sufficiently similar facts that it could be considered "particularized" to this case. The only Tenth Circuit decision meeting that standard would be Abeyta and, as discussed above, Abeyta would not support Plaintiffs here; it supports McClain. Likewise, the weight of authority from other federal courts, as discussed above, would favor McClain's position. Thus, even apart from the constitutional question, the District Court erred in impliedly holding that the law was so clearly established that it warranted denying qualified immunity.

   B.    _Plaintiffs Did Not Adequately Plead an Equal Protection Violation._

The District Court further erred in its analysis of Plaintiffs' claim that McClain's actions offended J.S.'s Fourteenth Amendment right to equal protection. In their briefing, Plaintiffs restricted their theory of the claim to sex-based hostile environment harassment. [App. Vol. I at 268 (rejecting class of one theory)]. Such a claim requires a plaintiff to allege that "(1) [the defendant]'s conduct subjected her to sex discrimination, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive as to interfere unreasonably with her school performance and create a hostile or abusive educational environment." Escue v. N. OK Coll., 450 F.3d 1146, 1157 (10th Cir. 2006) (citing Lipsett v. Univ. of P.R., 864 F.2d 881, 898 (1st Cir. 1988)).

    i.   *McClain Does Not Contest the District Court's Ruling as to the Severe or Pervasive Element of Plaintiffs' Claim.*

At this stage, McClain does not take issue with the District Court's resolution of his primary argument below, namely that the conduct alleged in the Second Amended Complaint was not sufficiently severe or pervasive to state a hostile environment harassment claim. The District Court's ruling appears to hew closely to this Court's opinion in Doe v. Hutchinson, 728 F. App'x 829 (10th Cir. 2018), and McClain is not aware of any subsequent changes in the law that would call for this Court to reach a different conclusion. While McClain may raise the issue again at summary judgment should the facts warrant, the issue is not part of this appeal.

> *ii. This Court Should Not Permit a Hostile Environment Harassment Claim to Proceed Absent Knowledge of the Gender-Based Aspect of the Defendant's Actions.*

However, the District Court failed to address McClain's alternative argument, namely that J.S.'s lack of understanding of the nature of McClain's alleged comments precluded a hostile environment harassment claim. As this Court noted in Escue, a hostile environment harassment claim within the educational context requires a showing that the defendant's "conduct was unwelcome," 450 F.3d at 1157, which necessarily implies that the plaintiff must be both aware of the conduct and perceive it as negative. That implication is consistent with Supreme Court and Tenth Circuit precedent on hostile environment harassment claims in the workplace context, where a claim of harassment can only be premised on acts of which the plaintiff is aware. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993); Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1095 (10th Cir. 2007) (citing Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 171 (10th Cir. 1996)).

According to the Second Amended Complaint, J.S. was **not** aware of the nature of McClain's alleged comments while at school. [App. Vol. I at 36 (¶ 51)]. It was not until his father explained the nature of the comments, [App. Vol. II at 36 (¶ 52)], that J.S. could have perceived any sexual aspect to them. Permitting a hostile environment harassment claim in this unusual circumstance should be declined as not in keeping with analogous precedent. It would effectively permit the claim to

proceed based entirely on what would be, to the recipient, contemporaneously gender-neutral conduct. As this Court has previously noted, gender-neutral conduct should be considered in hostile environment claims, but only as an adjunct to or in combination with gender-discriminatory conduct. See O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (10th Cir. 1999); Chavez v. New Mexico, 397 F.3d 826, 833 (10th Cir. 2005). When the alleged bad acts were primarily gender-neutral, this Court has instead denied hostile environment harassment claims. E.g. Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir. 1998). From J.S.'s perspective, McClain's conduct would have been primarily if not entirely gender-neutral. As such, the claim should fail as a matter of law.

### iii. The Unusual Facts of this Case Render the Law Far from Clearly Established.

Even were that not the case, the District Court likewise did not consider whether the law on this point is "clearly established" such that qualified immunity is unavailable. The District Court did address and rebuff a similar argument McClain made in the context of a state-law claim for intentional infliction of emotional distress, [App. Vol. II at 27-28], but even there the court below did not identify any legal authorities with similar fact patterns. McClain is not aware of any Supreme Court or Tenth Circuit cases with facts so similar to this one, notably including the time gap between a plaintiff hearing a statement and subsequently understanding its gender-discriminatory impact, that they could be considered "sufficiently

particularized" to this case. <u>Shepherd v. Robbins</u>, 55 F.4th 810, 815 (10th Cir. 2022). Likewise, McClain is not aware of such a "weight of authority from other courts" on this issue such that the law could be "clearly established." <u>PJ ex rel. Jensen v. Wagner</u>, 603 F.3d 1182, 1197 (10th Cir. 2010). Accordingly, even if Plaintiffs did state a plausible violation of the Equal Protection Clause via hostile environment harassment, McClain was nevertheless entitled to qualified immunity. <u>Cf.</u> <u>District of Columbia v. Wesby</u>, 583 U.S. 48, 63 (2018) ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. . . . It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.").

## **CONCLUSION**

For the reasons stated above, Defendants-Appellants respectfully request that this Court determine that they are entitled to qualified immunity. In accordance with that request, Defendants-Appellants further request the Court reverse the Opinions and Orders of the District Court and command the District Court to dismiss the claims at issue in this appeal.

Respectfully submitted by:

*/s/ Rhiannon K. Thoreson*

Frederick J. Hegenbart, OBA No. 10846
Adam S. Breipohl, OBA No. 32358
Rhiannon K. Thoreson, OBA No. 22748
ROSENSTEIN, FIST & RINGOLD
525 South Main, Ste. 700
Tulsa, OK 74103
Tel: (918) 585-9211
Fax: (918) 583-5617
fredh@rfrlaw.com
adamb@rfrlaw.com
rthoreson@rfrlaw.com
**ATTORNEYS FOR JASON LOCKHART,
SCOTTIE RUSSELL, STEVE WOODS, LESLIE
CRANK, RUSTY BLUE, COURTNEY
MORELAND, KATHY ANDERSON, BILL
BLAIR, AND TRACY BRYANT**

*/s/ Jason L. Callaway*

Whitney M. Eschenheimer, OBA No. 17025
Jason L. Callaway, OBA No. 31958
JOHNSON & JONES, P.C.
Two Warren Place
6120 S. Yale Ave., Ste. 500
Tulsa, OK 74136
Tel: (918) 584-6644
Fax: (888) 789-0940
wme@johnson-jones.com
jcallaway@johnson-jones.com
**ATTORNEYS FOR KEVIN MCCLAIN**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Because this case involves important questions of qualified immunity,

Appellants believe oral argument is necessary and will assist the decisional process.

*/s/ Rhiannon K. Thoreson*
Rhiannon K. Thoreson

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 9,303 words as determined by a word-processing system. This Brief complies with the paper size, line spacing, and margin limitations of Fed. R. App. P. 32(a)(4), and it is in a 14-point proportionally spaced font with serifs.

*/s/ Rhiannon K. Thoreson*
Rhiannon K. Thoreson

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that a copy of the forgoing Appellants' Consolidated Opening Brief, as submitted in Digital Form via the Court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the commercial virus scanning software Cynet, version 4.27.016746, last update on July 23, 2025 and according to the program is free of viruses.  In addition, I certify all required privacy redactions have been made.


*/s/ Rhiannon K. Thoreson*
Rhiannon K. Thoreson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of July, 2025, I electronically transmitted the above and foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

J. Blake Johnson – blakejohnson@overmanlegal.com
Kelsey Frobisher Schremmer – kelseyschremmer@overmanlegal.com
**Attorneys for Appellees**

Frederick J. Hegenbart – fredh@rfrlaw.com
Adam S. Breipohl – adamb@rfrlaw.com
Rhiannon K. Thoreson – rthoreson@rfrlaw.com
**Attorneys for Appellants Lockhart, Russell, Woods, Crank, Blue, Moreland, Anderson, Blain, and Bryant**

Whitney M. Eschenheimer – wme@johnson-jones.com
Jason L. Callaway – jcallaway@johnson-jones.com
**Attorneys for Appellant Kevin McClain**

*/s/ Rhiannon K. Thoreson*
Rhiannon K. Thoreson

## ATTACHMENTS

1. District Court's Opinion and Order [Dkt No. 124].......Attachment 001-030

2. District Court's Opinion and Order [ Dkt. No. 125]….. Attachment 031-081

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

AMBER STEPP and JONATHON STEPP,   )
individually and as parents and next friends   )
of J.S., a minor child,   )
   )
           Plaintiffs,   )
   )
v.   )   Case No. 6:24-cv-146-JAR
   )
TALIHINA PUBLIC SCHOOL DISTRICT, *et al.*,   )
   )
           Defendants.   )

## <u>OPINION AND ORDER</u>

Plaintiffs Amber and Jonathon Stepp (collectively, the "Stepps"), individually and as parents and next friends of J.S., a minor child, filed a complaint on April 23, 2024, which they amended on May 30, 2024, and again on December 5, 2024. The second amended complaint ("SAC") [Doc. 93][1] asserts fifteen claims against eleven defendants for alleged violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, the First, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983"), the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq.*, and Oklahoma law.

Before the court is the motion to dismiss ("Motion") [Doc. 101] filed on behalf of defendant Kevin McClain ("McClain") in his individual capacity as a teacher employed by defendant Independent School District No. 52 of LeFlore County, Oklahoma, commonly known as Talihina Public School District ("TPSD"). McClain

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination and documents numbers provided by CM/ECF.

seeks dismissal of all five claims asserted against him in the SAC pursuant to Fed.

R. Civ. P. 12(b)(6) and 8(a), the doctrine of qualified immunity, and the Oklahoma

Governmental Tort Claims Act, *Okla. Stat.* tit. ("O.S.") 51, § 151 *et seq.* Plaintiffs filed

a response opposing the Motion [Doc. 106], and McClain timely replied [Doc. 109].[2]

## I.    BACKGROUND

### A.    Plaintiffs' Allegations

At the time of the events in question, J.S. was an eleven-year-old student

enrolled in the fifth grade at Talihina Elementary. [Doc. 93, ¶ 31].[3]   Beginning in

August 2022 and at the direction of TPSD's superintendent, defendant Jason

Lockhart ("Supt. Lockhart" or "Lockhart"), and the Talihina Elementary principal,

defendant Kathy Anderson ("Principal Anderson" or "Anderson"), fifth-grade

students were segregated into two classes solely on the basis of gender. [*Id.* ¶ 21]. The

all-boys class was taught by McClain, and the all-girls class was taught by a female

teacher. TPSD's policy left fifth-grade students at Talihina Elementary, including

J.S., with no option but to attend gender-segregated classes. [*Id.* ¶¶ 22, 30, 33].

During the first week of the 2022-2023 school year—the week of August 16—

McClain frequently yelled at J.S. and his classmates. During the second week of

school—the week of August 22—McClain began targeting J.S. in several ways,

including berating J.S. until he was reduced to tears and prohibiting J.S. from leaving

---

[2] Though generally disfavored, the court acknowledges plaintiffs' incorporation by reference of their response brief [Doc. 105] opposing the TPSD defendants' separate motion to dismiss the SAC.

[3] TPSD is a political subdivision and body corporate of the State of Oklahoma, duly created and charged with the operation of Talihina Elementary School. [*Id.*, ¶ 2 (*citing* 70 O.S. §§ 1-108, 5-101, 5-103, 5-105)].

**002**

the classroom when he reportedly felt unwell, despite allowing another student to leave the classroom three separate times for the same reason. On August 24, a concerned parent of another fifth-grade boy contacted Mrs. Stepp regarding McClain's use of derogatory and harassing language toward J.S. Mr. Stepp met with Supt. Lockhart the following day to report McClain's targeted, disproportionate treatment of J.S. and explicitly raised concerns about his son's safety and wellbeing at school. TPSD responded by placing a "hall monitor" outside McClain's classroom to observe student-teacher interactions. [*Id.* ¶¶ 34-42].

While this hall monitor was purportedly on duty, McClain raised inappropriate topics with his students, including but not limited to: encouraging discussions about kissing girls; instructing his students not to draw male genitals because J.S. was "queer"; and, after witnessing J.S. playfully roughhouse with classmates, instructing his students to yell "f*g alert" upon unwanted contact from classmates. [*Id.* ¶¶ 43-45]. J.S. subsequently informed Mr. Stepp a classmate had advised that the next time McClain called him a "queer," J.S. should respond by calling McClain a different homophobic slur. Shocked by this language, Mr. Stepp soon discovered J.S. had learned these slurs from McClain. Mr. Stepp then defined these slurs for J.S., who immediately began to cry and question why McClain would refer to him using such terms. [*Id.* ¶¶ 50-52].[4] On or around the day that Mr. Stepp learned of McClain's name-calling, Mrs. Stepp separately learned of the same from a concerned grandparent of another fifth-grade boy. [*Id.* ¶ 55].

---

[4] When Mr. Stepp met with Supt. Lockhart on or about August 25, 2022, he was not yet aware of McClain's targeted use of derogatory and sexually harassing language toward J.S. [*Id.* ¶ 49].

3

**003**

During a subsequent phone call with the Stepps, McClain admitted to yelling at his class, using the phrase "f*g alert," and discussing male genitalia with his fifth-grade students in a manner that targeted J.S. [*Id.* ¶¶ 46, 62-63]. McClain further acknowledged that his conduct was generally inappropriate for fifth-grade students, and that he would not have used certain terms or raised certain topics had fifth-grade girls been present. Soon thereafter, the Stepps informed Principal Anderson of their intent to file a formal Title IX complaint against McClain. Upon information and belief, multiple defendants—including Lockhart, McClain, Anderson and Talihina Elementary's then-designated Title IX officer, Rebecca McLemore ("McLemore")— privately discussed the Stepp's concerns regarding McClain's behavior and coordinated a responsive strategy for the imminent Title IX complaint. [*Id.* ¶¶ 64-65].

On or about August 29, 2022, the Stepps met with Supt. Lockhart, McClain, and McLemore to gather pertinent information regarding the Title IX process and TPSD's grievance procedures. Supt. Lockhart prohibited McLemore from speaking during this meeting and the Stepps received little, if any, information on how to file a Title IX complaint. [*Id.* ¶¶ 66-67, 69]. McLemore contacted Mrs. Stepp directly after the meeting, however, to apologize and recommend that the Stepps complete an Alleged Sexual Harassment Form ("Form"). The Stepps submitted a completed Form that same day, and TPSD officials treated said Form as a formal complaint of sexual harassment under Title IX. [*Id.* ¶¶ 71-73]. Apart from the Form, the Stepps did not receive any notice or instruction concerning Talihina Elementary's grievance process or its procedure for resolving formal complaints under Title IX. [*Id.* ¶ 76].

4

**004**

On the same day the Stepps submitted their Title IX complaint, TPSD officials removed J.S. from the all-boys class but refused to remove McClain from the same pending resolution of the Title IX investigation. [*Id.* ¶¶ 94-97]. Eventually, Principal Anderson worked with the Stepps to create a modified school schedule wherein J.S. would attend the Language Arts class for one period and would, for the remainder of the school day, be kept alone in the library. [*Id.* ¶ 100]. The Stepps had no choice but to accept Anderson's modified schedule proposal, as they had refused an offer to place J.S. in the all-girls class due to concerns that such a placement would further stigmatize and ostracize their son. [*Id.* ¶¶ 99, 101]. While the Title IX investigation was ongoing, J.S. received little to no general instruction from teachers and received none of the special education support provided for in his Individual Education Plan ("IEP"). [*Id.* ¶¶ 100, 102, 105]. His grades dropped as a result, and TPSD deemed him ineligible to participate in extracurricular activities—including basketball. [*Id.* ¶¶ 103-04]. In or around late-August or early-September of 2022, the Stepps decided J.S. would receive a better education if he were homeschooled and withdrew their son from TPSD. [*Id.* ¶ 336; Doc. 93-3 at 2].

On or about August 30, 2022, McLemore met with Principal Anderson to discuss the investigation into the Stepp's Title IX complaint. During this meeting, Anderson confirmed she would provide McLemore with notes summarizing her communications with Supt. Lockhart and McClain regarding the Stepps' allegations against McClain. [Doc. 93, ¶¶ 107-08]. On September 1, however, Anderson refused to provide McLemore with any requested notes memorializing her admitted

conversations with Lockhart and McClain. According to a Title IX "Contact Sheet" completed by McLemore, Anderson and Lockhart had privately determined Anderson's notes and recollection were irrelevant to the Title IX investigation. [*Id.* ¶¶ 112-13]. McLemore abruptly resigned as Talihina Elementary's Title IX officer the following week, stating: "[I]t is very apparent to me that I am not qualified to fulfill this position. I believe to continue in this role would set me in a place of ethical and professional liability." [*Id.* ¶¶ 118-19].

Unbeknownst to plaintiffs at the time, on September 29, the Oklahoma State Department of Education issued a letter to TPSD and Lockhart advising that Talihina Elementary's policy of segregating fifth-grade classes on the basis of gender violated federal civil rights laws, including Title IX, and directing integration of fifth-grade classes by no later than October 10, 2022. [*Id.* ¶¶ 138-41; Doc. 93-3]. On October 12, 2022, J.S. returned to Talihina Elementary and was placed in an integrated fifth grade class not taught by McClain. [*Id.* ¶¶ 145, 333]. However, the Stepps pulled J.S. and his siblings from Talihina Elementary—the only public school in their immediate vicinity—following the 2022-2023 school year because they felt they could not safely report teacher-on-student sexual harassment or bullying if and/or when such issue arose in the future. To date, J.S. and his four younger siblings remain homeschooled. [*Id.* ¶¶ 167-69].

## B. SUMMARY OF DISMISSAL PLEADINGS

Plaintiffs bring the following five claims against McClain in their SAC, seeking relief in the form of actual and punitive damages: a § 1983 claim for alleged

constitutional violations (Count Four); a § 1983 claim for civil conspiracy (Count Seven); a state claim for intentional infliction of emotional distress (Count Eleven); a state claim for gender discrimination pursuant to 70 O.S. § 24-157 (Count Thirteen); and a state claim for civil conspiracy (Count Fifteen).

In late-December of 2024, the TPSD defendants and McClain separately filed a motion to dismiss the SAC pursuant to Rule 12(b)(6). McClain argues in his Motion that: (1) the SAC fails to allege McClain violated plaintiffs' constitutional rights; (2) McClain is entitled to qualified immunity on plaintiffs' federal claims; (3) plaintiffs fail to state a claim for intentional infliction of emotional distress because McClain's conduct, as alleged, is not "extreme and outrageous"; (4) there is no private right of action under 70 O.S. § 24-157; and (5) plaintiffs fail to state conspiracy claims against McClain under both state and federal law.[5]

## II.  STANDARD FOR MOTIONS TO DISMISS

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "'is appropriate if the complaint alone is legally insufficient to state a claim.'" Serna v. Denver Police Dep't, 58 F.4th 1167, 1169 (10th Cir. 2023) (quoting Brokers' Choice of Am., Inc. v. NBC Universal, 861 F.3d 1081, 1104-05 (10th Cir. 2017). When considering whether a plaintiff's claim should be dismissed under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving part. S.E.C. v. Shields, ("Shields") 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader

---

[5] On March 4, 2025, the court held an in-person hearing and heard oral arguments from all parties on the pending dismissal pleadings. See [Doc. 120].

is entitled to relief." <u>Fed. R. Civ. P. 8(a)(2)</u>. The complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief about the speculative level." <u>Bell Atl. Corp. v. Twombly</u> ("<u>Twombly</u>"), 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Shields</u>, 744 F.3d at 640 (*quoting* <u>Ashcroft v. Iqbal</u> ("<u>Iqbal</u>"), 556 U.S. 662, 678 (2009)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 678-79.

### III. CLAIMS FOR VIOLATIONS OF FEDERAL LAW

Plaintiffs' federal claims against McClain are asserted pursuant to § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." <u>Brown v. Buhman</u>, 822 F.3d 1151, 1161 & n.9 (10th Cir. 2016).

#### A. INTRODUCTION

To state a claim under § 1983, a plaintiff must (1) "allege the violation of a right secured by the Constitution and the laws of the United States" and (2) "show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Akins</u>, 487 U.S. 42, 48 (1988). McClain does not dispute that he was acting under the color of state law; thus, the issue is whether plaintiffs have sufficiently alleged they have been deprived of a constitutional right.

8

**008**

### 1.    Distinction Between Individual and Official Capacity Claims

As noted, plaintiffs seek to hold McClain liable under § 1983 in his individual (or personal) capacity *only*. "Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham ("Graham"), 473 U.S. 159, 165-66 (1985) (internal citations omitted). "[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal asserts, a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself." Id. at 166.

On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Id. Thus, to hold McClain liable under § 1983 in his individual capacity, plaintiffs must allege facts to establish his personal involvement in the purported deprivations. *See* Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 768 (10th Cir. 2013). More is required to establish official capacity liability, however, "for a [municipality] is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Graham, 473 U.S. at 166 (internal citations omitted). With this distinction in mind, it is clear that plaintiffs' § 1983 claims against McClain in his individual capacity cannot lead to imposition of fee liability upon TPSD. *See* id. at 167. Such a result would be inconsistent with the

well-settled principle that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

### 2. Qualified Immunity

McClain is entitled to assert, and has asserted, the defense of qualified immunity as to both § 1983 claims pending against him. *See* Maresca v. Bernalillo Cty., 804 F.3d 1301, 1307 (10th Cir. 2015) ("An official [sued in their individual capacity] may plead an affirmative defense of qualified immunity."). "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). When a defendant asserts qualified immunity at the motion to dismiss phase, the plaintiff "must allege facts sufficient to show (assuming they are true) that the [1] defendant plausibly violated their constitutional rights, and that [2] those rights were clearly established at the time" of the defendant's alleged conduct. Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008).[6] The court may assess these two inquiries in any order. *See* Pearson v. Callahan, 555 U.S. 223, 236 (2009). In making this assessment, the court must construe the SAC in the light most favorable to plaintiffs, accept all well-pleaded allegations as true, and draw all reasonable inferences in plaintiffs' favor. *See* Bella

---

[6] A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam) (quotations omitted). A relevant Supreme Court or Tenth Circuit decision is alone sufficient to establish a right for purposes of qualified immunity. A.N. v. Syling, 928 F.3d 1191, 1197 (10th Cir. 2019).

v. Chamberlain, 24 F.3d 1251, 1254 (10th Cir. 1994). If plaintiffs fail to satisfy either prong, this court must grant qualified immunity to McClain. *See* Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2011).

### B.   COUNT FOUR | § 1983 CLAIMS FOR CONSTITUTIONAL VIOLATIONS

In Count Four of the SAC, plaintiffs bring a broad array of § 1983 claims against two defendants: (1) TPSD, a municipal entity, for adopting and enforcing an unconstitutional policy of sex-based segregation in Talihina Elementary's fifth-grade program; and (2) and McClain, in his individual capacity, for alleged violations of J.S.'s constitutional rights to procedural due process, substantive due process, and equal protection. It appears that, based on the dismissal pleadings, both parties consider the individual capacity claims against McClain in Count Four as separate and unrelated to the municipal liability claim against TPS.

Notwithstanding, Fed. R. Civ. P. 10(b) provides that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Rule 10(b) further provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." As established, Count Four asserts two factually and legally distinct theories of § 1983 liability against a municipal entity and an individual defendant in his personal capacity. *See* Dodds v. Richardson, 614 F.3d 1185, 1198 (10th Cir. 2010) (since "vicarious liability is inapplicable to" § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (*quoting* Iqbal, 556 U.S. at 676).

**011**

Combining these separate claims into a single count is inconsistent with Rule 10(b)'s directive to promote clarity through distinct counts for distinct claims. Because the claims in Count Four are legally and factually independent, plaintiffs would have better complied with Rule 10(b) by asserting them in separate counts. Nevertheless, the court declines to dismiss Count Four on that basis alone and instead addresses the sufficiency of the embedded sub-claims against McClain under Rule 12(b)(6).

### 1. Deprivation of Procedural Due Process Rights

The Fourteenth Amendment forbids the state from depriving an individual of life, liberty, or property without due process of law. Coutoure v. Bd. of Educ. of Albuquerque Pub. Schs., 535 F.3d 1243, 1256 (10th Cir. 2008). The Procedural Due Process Clause, however, does not safeguard an infinite number of interests; rather "[a] person alleging that he has been deprived of his right to procedural due process must prove two elements: [1] that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and [2] that he was not afforded an appropriate level of process." Id. (citing Bd. of Regents v. Roth, 408 U.S. 564, 570 (1972) (additional citations omitted). "To determine what process is due, courts must balance: (1) the private interests that will be affected by the official action; (2) the risk of erroneous deprivation; and (3) the burden on the government from additional procedural requirements." Id. at 1258 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

As to the first element, plaintiffs allege that McClain deprived J.S. of his property interest in a public education and liberty interest in his reputation at

Talihina Elementary. [Doc. 93, ¶¶ 222-28; Doc. 105 at 18]. It is well-settled that "public school students have a protected property interest in public education and a liberty interest in their reputations, and therefore are entitled to certain procedural due process protections within the educational context." Id. at 1256 (*citing* Goss v. Lopez, 419 U.S. 565, 574 (1975)). Turning to the second element, the Supreme Court has held that when a "complete deprivation of education" occurs—such as when a student accused of wrongdoing is removed from school for ten days or less—the student at minimum is entitled to "notice and . . . some kind of hearing," though the "timing and content of the notice and the nature of the hearing will depend on the appropriate accommodation of competing interests involved." Goss, 419 U.S. at 578-79. Here, J.S. was not accused of wrongdoing. He accused McClain of wrongdoing and, immediately after the Stepps submitted a Title IX complaint against McClain for sexual harassment, TPSD unilaterally removed J.S. from McClain's classroom for approximately six weeks without notice, without any type of hearing, and without providing alternative options for fair and equitable instruction. [Doc. 93, ¶¶ 94-105].

Notwithstanding, McClain contends that plaintiffs fail to plausibly allege a procedural due process claim *against him* because they have not shown his personal involvement in any purported deprivations of process. [Doc. 101 at 15]. *See* Schneider, 717 F.3d at 768 ("Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation."). Plaintiffs specifically allege that McClain deprived J.S. of his property interest in a free public education by increasingly singling him out for "repeated and excessive discipline." [Doc. 93, ¶¶

13

**013**

36, 225]. As there are no allegations that McClain actually removed J.S. from the classroom, any loss of a property right is de minimis and not subject to procedural protections.[7] Even assuming McClain's "repeated and excessive discipline" was ineffective, or even counterproductive, such discipline cannot be treated as equivalent to denying J.S. the education to which he is legally entitled. As the SAC does not allege facts showing that McClain personally deprived J.S. of constitutionally adequate procedural protections, plaintiffs have failed plausibly state a procedural due process violation. Thus, McClain is entitled to qualified immunity on the § 1983 procedural due process sub-claim asserted against him in Count Four of the SAC.

### 2.    Deprivation of Substantive Due Process Rights

Plaintiffs allege that McClain used his position of authority "to target a child with sexual slurs, instruct classmates to bully him using the same slurs, physically and verbally intimidate him to the point of tears in front of his peers, invite public speculation and criticism of his nascent sexuality, encourage classmates to engage in ostracizing conduct, and obstruct his attempts to contact his parents when, in the midst of this abusive environment, the child began to feel unwell." [Doc. 105 at 19 (*citing* Doc. 93, ¶¶ 34-39, 44-47, 303-06)]. Such arguments require the court "to wade into the murky water of § 1983-based" substantive due process claims. Williams v. Berney, 519 F.3d 1216, 1220 (10th Cir. 2008) (citation omitted).

---

[7] *See e.g.*, Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1080-81 (5th Cir. 1995) ("De minimis or trivial deprivations of liberty in the course of the disciplining of a student do no implicate procedural due process requirements."); Fenton v. Steer, 423 F.Supp. 767 (W.D. Pa. 1976) (assignment to a room and a prohibition of participation in school trip were a de minimis interference with rights); Laney v. Farley, 501 F.3d 577, 581-82 (6th Cir. 2017) (a one-day in-school suspension did not infringe on the plaintiff's property or liberty interest); Hassan, *supra*, at 1078-80 (locking student in a holding room when he misbehaved did not require any procedural protections).

The Supreme Court recognizes two types of substantive due process claims: "(1) claims that the government has infringed a 'fundamental' right, and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience." Doe v. Woodard, 912 F.3d 1278, 1300 (10th Cir. 2019) (internal citations omitted). Here, plaintiffs have pled the latter based on McClain's arbitrary and conscious shocking decision to psychologically abuse J.S. for at least ten days. "Conduct that shocks the judicial conscience" is "deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" Seegmiller v. LaVerkin City, 528 F.3d 762, 767 (10th Cir. 2008) (quoting City of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). This "requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort[.]" Perez v. Unified Gov't of Wyandotte Cty., Kan. City, Kan., 432 F.3d 1163, 1168 & n.4 (10th Cir. 2005). McClain argues plaintiffs have not plausibly stated a substantive due process violation because their allegations "do not come close to satisfying the 'shocks the conscience' standard." [Doc. 101 at 12]. Whether specific conduct shocks the conscience is a question of law for the court. Id.

The Tenth Circuit has indeed recognized that psychological abuse alone can violate substantive due process protections, and that "matters relating to marriage, family, procreation, and the right to bodily integrity" are generally considered to implicate substantive due process rights. Abeyta v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1257 (10th Cir. 1996). The SAC seems to indicate the underlying

15

**015**

theory forming the basis of this sub-claim is J.S.'s substantive due process right to a free public education. [Doc. 93, ¶¶ 217, 225]. As pled, the court finds that the SAC sufficiently alleges conduct of the "high level of outrageousness" required by clearly established precedent. *See* id. at 1254-55 (requiring "a brutal and inhumane abuse of official power literally shocking to the conscience . . . with indifference or deliberate intent to cause psychological harm."). As plaintiffs have stated a plausible § 1983 substantive due process sub-claim against McClain in Count Four of the SAC, his connected request for qualified immunity is denied.

### 3.   Deprivation of Equal Protection Rights

Plaintiffs claim that "McClain's sexual harassment of J.S. was sufficiently severe and pervasive to create a hostile learning environment for J.S. and otherwise deprive J.S. of fair and equitable access to a public education." [Doc. 93, ¶ 223]. "Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983." Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1249 (10th Cir. 1999). In the Tenth Circuit, it has been clearly established that "sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws." Id. at 1251. One form of actionable sexual harassment is "hostile environment harassment." Escue v. N. Okla. Coll., 450 F.3d 1146, 1157 (10th Cir. 2006) (quotation omitted). To prevail on such a claim, plaintiffs must show that McClain's "conduct was sufficiently severe or pervasive as to interfere unreasonably with [J.S.'s] school performance and create a hostile or abusive educational environment." Id. The severe and pervasive inquiry "should be

16

**016**

judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 81 (1998) (quotation omitted). Accordingly, the analysis "depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." <u>Id</u>. at 82. Two such considerations are "the ages of the harasser and the victim." <u>Davis v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 651 (1999).

McClain contends the SAC is insufficient to establish an equal protection violation because plaintiffs allege only five explicitly gender-based comments that were directed toward J.S. [Doc. 109 at 7-8]. This argument rests on two mistaken premises. First, "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile . . . environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." <u>O'Shea v. Yellow Tech. Servs., Inc.</u>, 185 F.3d 1093, 1097 (10th Cir. 1999). "This is because what is important in a hostile environment claim is the environment, and gender-neutral harassment makes up an important part of the relevant . . . environment." <u>Chavez v. New Mexico</u>, 397 F.3d 826, 833 (10th Cir. 2005). Second, McClain's argument fails to recognize that sexually charged comments, even if not directly about gender, qualified as gender-related under Tenth Circuit precedent.[8] Although federal courts do no not

---

[8] <u>See</u> <u>O'Shea</u>, 185 F.3d at 1099 (comments in which co-worker "compared his wife to a Playboy magazine and described a dream about a naked woman jumping on a trampoline" are related to "gender or sexual animus"); <u>Penry v. Fed. Home Loan Bank of Topeka</u>, 155 F.3d 1257, 1263 (10th Cir. 1998) (comments comparing the shape of a roof to breasts and a trip to a Hooters restaurant "have gender-related implications").

**017**

impose "a general civility code," Oncale, 523 U.S. at 80, we do include comments and actions that are inherently sexual in nature under the rubric of "gender-related." Though McClain argues he directed only five gender-based comments toward J.S., the SAC contains much more. Plaintiffs allege that, within the first ten days of the 2022-2023 school year, McClain "made J.S. cry in class twice, started at least two inappropriately sexual conversations (about kissing and about male genitalia), called J.S. two different slurs, affirmatively encouraged J.S.'s classmates to engage in sex-based harassment of J.S., and screamed at J.S.'s class so many times and so violently that J.S. 'repeatedly' reported the behavior to his parents and at least two concerned parents of other children called [the Stepps] to report [McClain's] behavior." [Doc. 106 at 3 (*citing* Doc. 93, ¶¶ 34-45, 55-59, 94)].

These allegations plausibly suggest a pervasively hostile environment and thus suffice at the motion to dismiss stage. *See* Iqbal, 556 U.S. at 678; Escue, 450 at 1157. As noted, in assessing the requisite degree of severity or pervasiveness to support a hostile environment claim, the court must be mindful of "surrounding circumstances, expectations, and relationships," Oncale, 523 U.S. at 81, including the "ages of the harasser and the victim," Davis, 526 U.S. at 651. McClain's role as an elementary school teacher obviously requires greater sensitivity toward students than would be required as between coworkers. *See* Oncale, *supra*, at 82 ("Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find

018

severely hostile or abusive."). The court concludes that plaintiffs have plausibly stated a § 1983 equal protection sub-claim against McClain in Count Four of the SAC. As a result, McClain's connected request for qualified immunity is denied.

### C.    COUNT SEVEN | § 1983 CONSPIRACY CLAIM

McClain contends plaintiffs' failure to allege any constitutional deprivation resulting from his personal conduct precludes their § 1983 conspiracy claim against him. [Doc. 101 at 28]. At the motion to dismiss stage, a plaintiff need only allege facts demonstrating "an agreement and concerted action amongst the defendants." Tomkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1988). Recognizing that "direct evidence of an agreement to join a conspiracy is rare," the Tenth Circuit has held that "assent can be inferred from acts furthering the conspiracy's purpose." Bledsoe v. Carreno, 53 F.4th 589, 609 (10th Cir. 2022).

The SAC alleges a conspiracy involving all individual defendants, including McClain, where they agreed to take unlawful actions to protect TPSD and McClain against plaintiffs' allegations of discrimination and harassment, and to deprive plaintiffs of a fair, unbiased investigation into said allegations [Doc. 93, ¶¶ 65, 75, 81, 96-98, 106-108, 111-113, 115-117, 124, 147-152]. Accordingly, the court finds that plaintiffs have alleged sufficient agreement to support their § 1983 conspiracy claim against McClain. The question remains, however, of whether plaintiffs have sufficiently alleged McClain's personal involvement in the constitutional deprivations arising from this purported agreement.

019

### 1.    Deprivation of Procedural Due Process Rights

As established, plaintiffs have alleged facts sufficient to establish that McClain deprived J.S. of his property interest in a public education and liberty interest in his reputation at Talihina Elementary. [*Id*. ¶¶ 256, 259-67]. As for the second requisite element of a § 1983 procedural due process claim, plaintiffs allege that McClain entered into an agreement with individual TPSD defendants to interfere with the Title IX investigation and deprive plaintiffs of their rights under the Title IX process. [*Id*. ¶¶ 94-102, 256-262]. Nothing in the SAC links McClain to the purported mishandling of the Title IX investigation, however. *See* Robbins, 519 F.3d at 1250. Plaintiffs allege that McClain was the subject of the Title IX investigation, rather than an investigator or a school official with authority to act on the investigation's results. [*Id*. ¶¶ 69, 121, 128-33]. Plaintiffs do not allege that McClain possessed, let alone exercised, any level of control over the manner in which TPSD resolved the Stepps' Title IX complaint. In fact, the SAC alleges that TPSD failed to include plaintiffs *and* McClain in any notice of the complete allegations raised during the Title IX process. [*Id*. ¶ 81]. As there are no factual allegations in Count Seven indicating that McClain deprived J.S. of constitutionally adequate procedural protections, plaintiffs have failed to allege facts showing McClain violated their procedural due process rights.

### 2.    Deprivation of Substantive Due Process Rights

As noted, Count Seven asserts a conspiracy between McClain and individual TPSD defendants to violate plaintiffs' constitutional rights through a sham Title IX

**020**

investigation. [*Id.* ¶¶ 256-57]. The only factual allegation supporting McClain's personal involvement is his sexual harassment of J.S. from August 16 to August 29, 2022—*i.e.*, prior to the alleged conspiracy to conduct a constitutionally deficient Title IX investigation. [*Id.* ¶¶ 34, 94, 260]. The allegations in Count Seven do not support a claim that McClain conspired with others *after the fact* to violate J.S.'s substantive due process rights. Alleging prior misconduct is not sufficient to show involvement in a later conspiracy absent factual content tying McClain to that later conduct. The court accordingly finds that plaintiffs have failed to allege facts in Count Seven showing McClain violated their substantive due process rights.

### 3.    Deprivation of Equal Protection Rights

In the same vein, the only factual allegation supporting McClain's personal involvement in the purported violation of plaintiffs' equal protection rights is his sexual harassment of J.S. [*Id.* ¶¶ 34, 94, 260]. For the reasons set forth in the previous section, the court finds plaintiffs have failed to allege facts showing McClain violated their equal protection rights. Because the SAC is bereft of factual allegations that could plausibly indicate McClain's personal involvement in any constitutional violations underlying the § 1983 conspiracy claim, McClain is entitled to qualified immunity and his request for Rule 12(b)(6) dismissal of Count Seven is granted.

### IV.    CLAIMS FOR VIOLATIONS OF STATE LAW

Plaintiffs assert three claims under Oklahoma law against McClain, alleging intentional infliction of emotional distress ("IIED") (Count Eleven), violation of 70 O.S. § 24-157's prohibition against gender discrimination in public education (Count

021

Thirteen), and civil conspiracy (Count Fifteen). McClain contends the latter two claims should be dismissed because, as alleged in the SAC, any actions by him were performed in the scope of his employment. Under the Oklahoma Governmental Tort Claims Act (GTCA), only a governmental entity or political subdivision can be liable for a tort committed by an employee while acting within the scope of employment. The GTCA precludes tort actions against "an employee of the state or political subdivision acting within the scope of his employment." 51 O.S. § 163(C); [9] *see also* id. § 152(12) (defining "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment of tasks lawfully assigned by a competent authority."). Thus, individual government employees are immunized from tort liability for actions taken within the scope of employment. *See e.g.*, Tuffy's, Inc. v. City of Okla. City, 2009 OK 4, ¶ 8, 212 P.3d 1158, 1163.

## A.  COUNT ELEVEN | IIED

Oklahoma recognizes the tort of IIED as an independent tort governed by the narrow standards of the Restatement (Second) of Torts § 46 (1977). Breeden v. League Servs. Corp., 1978 OK 27, ¶ 12, 575 P.2d 1374, 1378. To state a claim for IIED, plaintiffs must allege facts that could reasonably show (1) McClain acted intentionally or recklessly, (2) McClain's conduct was extreme and outrageous, (3) the conduct caused J.S. emotional distress, and (4) the emotional distress was severe. *See* Durham v. McDonald's Rests. of Okla., Inc., 2011 OK 45, ¶ 4, 256 P.3d 64, 66. To

---

[9] TPSD is a "political subdivision" to which the GTCA applies. *See* id. § 152(11)(b); *see also* id. § 152(7) (defining "employee" as "any person who is authorized to act on behalf of a political subdivision[.]").

**022**

prevail on the second element, plaintiffs must set forth allegations showing McClain's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." Comput. Publs, Inc. v. Welton ("Welton"), 2002 OK 50, ¶ 9, 49 P.3d 732, 735 (citation omitted); *see also* Eddy v. Brown, 1986 OK 3, ¶ 7, 715 P.2d 74, 75 (holding liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). For purposes of his Motion, McClain assumes plaintiffs have sufficiently pled the first and fourth elements. [Doc. 101 at 21 & n.6].

With respect to the second element, plaintiffs allege McClain "engaged in a sustained campaign of fear, hatred, and bigotry aimed at breaking the spirit, ruining the reputation, and stunting the sexual and social development of an eleven-year-old child" and "used his position of authority" to "isolate, intimidate, and harm J.S. through a variety of tactics[.]" [Doc. 106 at 4]. Such tactics included, without limitation: (i) McClain telling "J.S.'s peers that J.S.'s attempts to play in the ordinary manner of elementary school children was sexual and freakish"; (ii) McClain encouraging J.S.'s classmates to join him in calling J.S. a "f*g"; and (iii) McClain instructing J.S.'s classmates "that they ought not draw penises in their notebooks" because J.S. is "queer" and "incapable of handling that sort of thing." [*Id.* (*citing* Doc. 93, ¶¶ 44-46, 62]. McClain points to numerous cases in support of the proposition that "yelling, verbal reprimands, cursing, verbal altercations, or similar actions are insufficient" to clear the "extreme and outrageous" hurdle. *See* [Doc. 101 at 22-24].

**023**

The IIED claims in these cases, however, do not involve minors and arose from less egregious allegations than those asserted against McClain. Ultimately, McClain's position—namely, it is not "extreme or outrageous" when a teacher repeatedly targets an eleven-year-old boy in front of his male peers through yelling and the use of derogatory language, homophobic slurs, and unequal treatment— is unpersuasive

Turning to the third element, plaintiffs allege McClain "screamed, berated, and belittled until J.S. cried in front of all of his male friends and counterparts on more than one occasion," and then "blamed J.S.'s lack of masculinity—or male "maturity"— for his sensitivity to the mistreatment. [Doc. 106 at 4 (*citing* Doc. 93, ¶¶ 37-38, 62)]. They further allege that, as a result of McClain's conduct, J.S. "suffered mental and emotional distress, mental pain and suffering, anguish, humiliation, embarrassment, anger, and worry[.]" [Doc. 93, ¶ 312]. McClain responsively contends that J.S. did not know enough about the terms "queer" and "f*g" to be distressed at the time McClain introduced those words into the classroom, and if J.S. had not later asked Mr. Stepp to define such slurs, he would not have suffered significant distress. [Doc. 101 (*citing* Doc. 93, ¶ 51)]. This argument—that J.S. could not have suffered emotional distress from being called "queer" and "f*g" because he did not initially understand the meaning of those slurs—reflects a flawed understanding of the law and of human experience. To suggest that an eleven-year-old child must comprehend the precise semantic content of homophobic epithets in order to be harmed by them ignores the obvious: that disparaging words, particularly when repeated publicly by a figure of authority, carry emotional weight independent of a child's technical understanding.

Worse still, McClain's argument attempts to shift responsibility for the harm he allegedly caused not only onto the child, but onto the child's father—reasoning that, had the boy never asked his father what the slurs meant, he might have remained unharmed. This a striking example of what some courts have termed the "ostrich method" of argumentation: a refusal to confront obvious facts by burying one's head in the sand. *See* Gonzalez-Servin v. Ford Motor Co., 662 F.3d 931, 934 (7th Cir. 2011) ("The ostrich is a noble animal, but not a proper model for an appellate advocate.").

This court is tasked with acting as a "gatekeeper" to determine whether the acts complained of could "reasonably be regarded as sufficiently extreme and outrageous." Miller v. Miller, 1998 OK 24, ¶ 34, 956 P.2d 887, 901. The test is whether McClain's alleged conduct "has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress." Durham, ¶ 9, 256 P.3d at 67. In other words, plaintiffs must allege facts that allow this court to reasonably infer "that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" Welton, ¶ 9, 49 P.3d at 735. Accepting all well-pleaded factual allegations as true, the court finds that McClain's targeted use of derogatory language, homophobic slurs, and belittling tactics toward an eleven-year-old boy in front of his male peers may reasonably be regarded as meeting this test. *See* Miller, ¶ 37, 956 P.2d at 902. The court further finds reasonable people could conclude that such conduct meets the extreme and outrageous test. Id. at ¶ 34. McClain's request for dismissal of Count Eleven is therefore denied.

### B.   COUNT THIRTEEN | GENDER DISCRIMINATION

Oklahoma House Bill 1775 ("HB 1775" or "the Act") was signed into law on May 7, 2021. The Act, codified in 70 O.S. § 24-157, and its implementing regulations, codified in Oklahoma Administrative Code (OAC) 210:10-1-23, prohibit the training or teaching of specified subjects in Oklahoma schools. In the present case, plaintiffs allege McClain "required or made part of his teaching or coursework discriminatory principles" prohibited by 70 O.S. §§ 24-157(B)(1)(a), (c), (e), and (g).[10] [Doc. 93, ¶ 334]. McClain argues Count Thirteen is subject to dismissal under Rule 12(b)(6) because there is no private right of action for violation of HB 1775 and, even if this were not so, TPSD would be the only proper party to such a claim. [Doc. 101 at 24-27]. According to plaintiffs, however, HB 1775 creates an implied private right of action. [Doc. 105 at 29].

Under Oklahoma law, a private right of action can be implied from a regulatory or public-law statute if the following elements are met: (1) the plaintiff is of the class for whose benefit the statute was created; (2) some indication of legislative intent, explicit or implicit, suggests that the Legislature intended to create a private remedy, rather than deny the same; and (3) implying a remedy for the plaintiff would be consistent with the underlying purpose of the legislative scheme. Owens v. Zumwalt, 2022 OK 14, ¶ 10, 503 P.3d 1211, 1215. For purposes of his Motion, McClain only

---

[10] The Oklahoma Attorney General and his office are presently enjoined from enforcing certain portions of HB 1775. *See* Black Emergency Response Team v. Drummond ("Black"), 737 F.Supp.3d 1136 (W.D. Okla. June 14, 2024). This preliminary injunction effects one of the four provisions on which plaintiffs rely—*i.e.*, "[n]o teacher . . . shall require or make part of a course" the concept that "an individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex[.]" 70 O.S., § 24-157(B)(1)(c); Black, *supra*, at 1157.

26

**026**

disputes plaintiffs' ability to meet the second element. [Doc. 101 at 25]. In evaluating

the second prong, courts must determine legislative intent by "looking at the precise

wording of the [statute] and studying its history." Holbert v. Echeverria, 1987 OK 99,

¶ 11, 744 P.2d 960, 964.

The court finds no legislative intent, either implied or explicit, in HB 1775 to

create a private remedy for violations of said statute. Rather, the Act is a legislative

grant of authority to the Oklahoma State Board of Education (OSBE) to "promulgate

rules" and "implement the [Act's] provisions." See 70 O.S. § 24-157(B)(2). The

penalties set out for violation of the Act are administrative. See OAC 210:10-1-23(j).

Both state and federal courts have held the second prong unsatisfied where a statute

granted regulatory authority to an administrative agency rather than explicitly

creating a private right of action within the statute itself.[11] Plaintiffs nevertheless

contend that, in exercising its authority to promulgate rules under the Act, the OSBE

recognized a private right of action in March of 2022:

> Title VI and Title IX may be enforced by private right of action, whereby
> aggrieved parties may seek relief, including monetary damages, for
> violations of federal antidiscrimination laws. Victims of discrimination
> may file a lawsuit directly against the Public School. In addition to any
> private rights of action, aggrieved parties may seek applicable remedies
> through the U.S. Department of Education's Office for Civil Rights or
> the U.S. Department Justice's Civil Rights Division.

---

[11] See e.g., Nichols Hills Physical Therapy v. Guthrie, 1995 OK CIV APP 97, ¶ 9, 900 P.2d 1024,
1026 ("Had the legislature intended to provide an injured patron with the right of private action . . . it
would have explicitly done so."); Thomas v. Metro. Life Ins. Co., 540 F.Supp.2d 1212, 1230 (W.D. Okla.
Jan. 10, 2008) ("When a statute grants enforcement authority to an administrative agency or officer,
this grant implies the legislature did not intend to provide a private right of action."); Risk v. Allstate
Life Ins. Co., No. 4-CV-333-CVE-FHM, 2006 WL 2021597 at *3 (N.D. Okla. July 17, 2006) ("In terms
of statutory construction, the inclusion of administrative enforcement impliedly excludes a private
right of action.") (citing Holbert, ¶¶ 15-16, 744 P.2d at 965).

**027**

[Doc. 105 at 30 (*citing* OAC 210:10-1-23(o))]. McClain argues the implementing regulations were not in force at the time he allegedly violated the Act. Indeed, the pertinent regulations went into effect on September 11, 2022. *See* 39 Okla. Reg. 992, 2022 OK REG TEXT 603412 (NS). According to the SAC, J.S. was last in McClain's classroom on August 29, 2022. [Doc. 93, ¶ 84]. While plaintiffs contend the alleged improper conduct spanned a time period from mid-August 2022 to mid-October 2022 [Doc. 105 at 31 (*citing* Doc. 94, ¶¶ 138-141)], the allegations against McClain under Count Thirteen are limited to the discriminatory principles he implemented through teaching or coursework in J.S.'s classroom. To the extent the Act provides for an implied private right of action against teachers, plaintiffs' claim for violation of HB 1775 against McClain fails because the implementing regulations went into effect *after* his purported violation of the Act. McClain's request for Rule 12(b)(6) dismissal of Count Thirteen is therefore granted.[12]

### C.   COUNT FIFTEEN | CIVIL CONSPIRACY

According to the Oklahoma Supreme Court, the tort of civil conspiracy:

> . . . consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. There can be no civil conspiracy where the *act* of and the *means employed* are lawful.

Brock v. Thompson, 1997 OK 127, ¶ 38, 948 P.2d 279, 294 (footnotes omitted) (emphasis in original). McClain argues that plaintiffs fail to allege he entered into

---

[12] Even if McClain's purported violation of the Act occurred after the implementing rules went into effect, he would otherwise be exempt from liability on Count Thirteen under § 163(C) of the GTCA.

any agreement with any other defendant to perform an unlawful act or to use unlawful means. [Doc. 101 at 29]. *See* <u>Gaylord Entm't Co. v. Thompson</u>, 1998 OK 30, ¶ 40, 958 P.2d 128, 148 ('In order to be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means."). The court agrees, as only the following defendants are alleged to have entered into agreements under Count Fifteen: Anderson and Lockhart [Doc. 93, ¶ 350]; Anderson and Russell [*Id*. ¶ 351]; Anderson, Lockhart, Russell, Blue, Crank, Moreland, and Woods [*Id*. ¶ 352]; Bryant and Blair [*Id*. ¶ 353]. McClain is consequently exempt from liability under § 163(C) of the GTCA, and his request for dismissal of Count Fifteen under Rule 12(b)(6) is granted.

## V.   CONCLUSION

Based on the foregoing, McClain's motion to dismiss [Doc. 101], filed December 26, 2024, is **GRANTED in part** and **DENIED in part**. Following entry of this Order, the status of each claim asserted against McClain in the SAC is as follows:

- <u>Count Four</u>. The § 1983 procedural due process sub-claim is dismissed for failure to state a claim against McClain. The § 1983 substantive due process and equal protection sub-claims remain pending against McClain.

- <u>Count Seven</u>. The § 1983 conspiracy claim is dismissed for failure to state a claim against McClain.

- <u>Count Eleven</u>. The claim for intentional infliction of emotional distress remains pending against McClain.

- <u>Count Thirteen</u>. The claim for violation of HB 1775's prohibition against gender discrimination in public education is dismissed for failure to state a claim against McClain.

- <u>Count Fifteen</u>. The claim for civil conspiracy is dismissed for failure to state a claim against McClain.

**IT IS SO ORDERED** this 17th day of April, 2025.

_____

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

AMBER STEPP and JONATHON STEPP,　　　　)
individually and as parents and next friends　)
of J.S., a minor child,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　Plaintiffs,　　　)
　　　　　　　　　　　　　　　　　　　　)　Case No. 6:24-cv-146-JAR
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
TALIHINA PUBLIC SCHOOL DISTRICT, *et al.*,　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　Defendants.　　)

## OPINION AND ORDER

Plaintiffs Amber and Jonathon Stepp (the "Stepps"), individually and as parents and next friends of J.S., a minor child, filed a complaint on April 23, 2024, which they amended on May 30, 2024, and again on December 5, 2024. The second amended complaint ("SAC") [Doc. 93][1] asserts fifteen claims against eleven defendants for alleged violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, the First, Fifth, and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983"), the Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. § 1701 *et seq.*, and Oklahoma law.

Before the court is the renewed joint motion to dismiss ("Motion") [Doc. 100] filed on behalf of ten defendants:[2] Independent School District No. 52 of LeFlore County, Oklahoma, commonly known as Talihina Public School District ("TPSD");

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination and document numbers provided by CM/ECF.

[2] The eleventh defendant, Kevin McClain ("McClain"), filed a separate motion to dismiss the SAC on December 26, 2024. [Doc. 101]. On April 17, 2025, the court entered an Order granting in part and denying in part McClain's dismissal motion. [Doc. 124].

Jason Lockhart, in his individual capacity as TPSD's superintendent and as a member of the TPSD Board of Education (the "Board"); Kathy Anderson, in her individual capacity as the principal of Talihina Elementary; Bill Blair, in his individual capacity as a teacher and Title IX officer for Talihina Elementary; Rusty Blue, in his individual capacity as a Board member; Tracy Bryant, in his individual capacity as a teacher and Title IX officer for Talihina Elementary; Leslie Crank, in his individual capacity as a member and clerk of the Board; Courtney Moreland, in her individual capacity as a Board member; Scottie Russell, in his individual capacity as a member and president of the Board; and Steve Woods, in his individual capacity as a member and vice president of the Board. The Motion seeks dismissal of the SAC pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a), the doctrine of qualified immunity, and the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 *Okla. Stat.* ("O.S.") § 151 *et seq.* Plaintiffs filed a response opposing the Motion [Doc. 105], and the moving defendants timely replied [Doc. 111].

## I.    BACKGROUND

### A.    PLAINTIFFS' ALLEGATIONS

At the time of the events in question, J.S. was an eleven-year-old student enrolled in the fifth grade at Talihina Elementary. [Doc. 93, ¶ 31].[3] Beginning in August 2022 and at the direction of TPSD's superintendent, defendant Jason Lockhart ("Supt. Lockhart" or "Lockhart"), and the Talihina Elementary principal,

---

[3] TPSD is a political subdivision and body corporate of the State of Oklahoma, duly created and charged with the operation of Talihina Elementary School. [*Id.* ¶ 2 (*citing* 70 O.S. §§ 1-108, 5-101, 5-103, 5-105)].

2

defendant Kathy Anderson ("Principal Anderson" or "Anderson"), fifth-grade students were segregated into two classes solely on the basis of gender. The all-boys class was taught by defendant McClain, and the all-girls class was taught by a female teacher. [*Id.* ¶¶ 21-22, 30]. This policy left fifth-grade students at Talihina Elementary with no option but to attend gender-segregated classes. [*Id.* ¶ 33]. The members of TPSD's Board—defendants Blue, Crank, Lockhart, Moreland, Russell, and Woods (the "Board Members")—were aware of the segregation policy and either explicitly or tacitly approved of the same. [*Id.* ¶ 23].

During the first week of the 2022-2023 school year—the week of August 16—McClain frequently yelled at J.S. and his classmates. During the second week of school—the week of August 22—McClain began targeting J.S. in several ways, including berating J.S. until he was reduced to tears and prohibiting J.S. from leaving the classroom when he reportedly felt unwell despite allowing another student to do so three separate times for the same reason. On August 24, a concerned parent of another fifth-grade boy contacted Mrs. Stepp regarding McClain's use of derogatory and harassing language during class. Mr. Stepp met with Supt. Lockhart the following day to report McClain's treatment of J.S. and to raise concerns about his son's safety and well-being at school. TPSD responded by placing a "hall monitor" outside McClain's classroom to observe teacher-student interactions. [*Id.* ¶¶ 34-42].

While this hall monitor was purportedly on duty, McClain raised additional inappropriate topics with his students, including but not limited to encouraging discussions about kissing girls, instructing his students not to draw male genitalia

3

**033**

because J.S. was "queer" and, after witnessing J.S. playfully roughhouse with friends, instructing his students to yell "f*g alert" upon unwanted contact from classmates. [*Id.* ¶¶ 43-45]. J.S. subsequently informed his father a classmate had advised that the next time McClain called him "queer," J.S. should respond by calling McClain a different homophobic slur. Mr. Stepp, shocked by this language, explained the meaning of these slurs to J.S.—who immediately began to cry and question why a teacher would call him those names. [*Id.* ¶¶ 50-52].[4] On or around the same date Mr. Stepp learned of McClain's name-calling, Mrs. Stepp separately learned of the same from a concerned grandparent of another fifth-grade boy. [*Id.* ¶ 55].

During a subsequent phone call with the Stepps, McClain admitted to yelling at his class, using the phrase "f*g alert," and discussing male genitalia with his fifth-grade students in a manner that targeted J.S. [*Id.* ¶¶ 46, 62-63]. McClain further acknowledged that his conduct was generally inappropriate for fifth-grade students, and that he would not have used certain terms or raised certain topics had fifth-grade girls been present. Soon thereafter, the Stepps informed Principal Anderson of their intent to file a formal complaint against McClain. Upon information and belief, multiple defendants—including Lockhart, McClain, Anderson and Talihina Elementary's then-designated Title IX officer, Rebecca McLemore[5] ("McLemore")— privately discussed the Stepp's concerns about McClain's behavior and coordinated a responsive strategy for the imminent Title IX complaint. [*Id.* ¶¶ 64-65].

---

[4] When Mr. Stepp met with Supt. Lockhart on or about August 25, 2022, he was not yet aware of McClain's targeted use of discriminatory slurs. [*Id.* ¶ 49].

[5] Plaintiffs voluntarily dismissed Rebecca McLemore as a defendant to this action by way of omitting her from the caption page of their SAC. *Compare* [Doc. 12 at 1] *with* [Doc. 93 at 1].

On or about August 29, 2022, the Stepps met with Lockhart, McClain, and McLemore to gather pertinent information regarding the Title IX process and TPSD's grievance procedures. Lockhart prohibited McLemore from speaking during this meeting and the Stepps received little, if any, information on how to file a formal Title IX complaint. [*Id*. ¶¶ 66-67, 69]. McLemore contacted Mrs. Stepp directly after the meeting to apologize and recommend that the Stepps complete an Alleged Sexual Harassment Form ("Form"). The Stepps submitted a completed Form that same day, and TPSD officials treated said Form as a formal complaint of sexual harassment under Title IX. [*Id*. ¶¶ 71-73]. Other than being pointed to the Form, the Stepps received no instruction concerning Talihina Elementary's grievance process or its procedure for resolving formal complaints under Title IX. [*Id*. ¶ 76].[6]

On the same day the Stepps submitted the Title IX complaint, TPSD removed J.S. from the all-boys class but refused to remove McClain from the same pending resolution of the Title IX investigation. [*Id*. ¶¶ 94-97]. Eventually, Principal Anderson worked with the Stepps to create a modified school schedule wherein J.S. would attend the Language Arts class for one period and would, for the remainder of the school day, be kept alone in the library. [*Id*. ¶ 100]. The Stepps had no choice but to accept Anderson's modified schedule proposal, as they had refused an offer to place J.S. in the all-girls class due to concerns such a placement would further stigmatize and ostracize their son. [*Id*. ¶¶ 99, 101]. While the Title IX investigation was ongoing,

---

[6] Because TPSD officials failed to provide the Stepps with any notice of their rights as Title IX complainants, the Stepps were never informed as to the identity of the Title IX coordinator designated by Talihina Elementary and were unaware of their right to retain an advisor to assist in navigating the Title IX process. [Doc. 93, ¶¶ 82, 84].

J.S. received little to no general instruction from teachers and received none of the special education support provided for in his Individual Education Plan ("IEP"). [*Id.* ¶¶ 100, 102, 105]. J.S.'s grades dropped as a result, and TPSD deemed him ineligible to participate in extracurricular activities—such as basketball. [*Id.* ¶¶ 103-04]. At some point between August 29 and October 12, the Stepps decided J.S. would receive a better education if he were homeschooled and withdrew their son from Talihina Elementary. [*Id.* ¶ 336; Doc. 93-3 at 2].

On or about August 30, 2022, McLemore met with Principal Anderson to discuss matters concerning the Title IX investigation. During this meeting, Anderson confirmed she would provide McLemore with notes summarizing her communications with Supt. Lockhart and McClain regarding the Stepp's complaint. [Doc. 93, ¶¶ 107-08]. On September 1, however, Anderson refused to provide McLemore with any notes memorializing her admitted conversations with Lockhart and McClain. According to a Title IX "Contact Sheet" completed by McLemore, Anderson and Lockhart had privately determined Principal Anderson's notes and recollection were irrelevant to the investigation. [*Id.* ¶¶ 112-13]. McLemore abruptly resigned as a Title IX officer the following week, stating: "[I]t is very apparent to me that I am not qualified to fulfill this position. I believe to continue in this role would set me in a place of ethical and professional liability." [*Id.* ¶¶ 118-19].

On September 6, 2022, the Stepps attended a public meeting of the Board and, along with other parents and guardians of students in the all-boys class, presented their concerns regarding McClain's behavior and TPSD's ongoing segregation policy.

6

**036**

The Board Members heard the Stepp's presentation but asked no questions, made no comments, and offered no solutions. After the meeting, the Board Members declined to take any action relating to McClain's alleged behavior or the school district's segregation policy. [*Id.* ¶¶ 115-17]. At this point, the Stepps had yet to receive any instruction on TPSD's policies governing sexual harassment grievance procedures and the Title IX process. Upon information and belief, TPSD maintained no such policies and additionally failed to provide Title IX training to any school employees—including designated Title IX officers. [*Id.* ¶¶ 90-92, 194].

Following McLemore's resignation on September 8, 2022, TPSD designated defendants Bill Blair ("Blair") and Tracy Bryant ("Bryant") as Talihina Elementary's new Title IX officers. [*Id.* ¶ 121]. Blair and Bryant quickly completed the Title IX investigation without interviewing plaintiffs or any parents of other fifth-grade boys who reported McClain for misconduct. [*Id.* ¶¶ 121-29]. Because the Stepps neither received a copy of the school district's Title IX policy nor any notice of their rights under Title IX, they were unaware of their right to inspect and review evidence gathered before issuance of an investigative report. [*Id.* ¶ 86]. Mr. Stepp simply received a call from Principal Anderson on September 17 notifying him the investigation was closed, that no further information would be provided, and that J.S. may immediately return to McClain's all-boys class. [*Id.* ¶¶ 133, 136].

Unbeknownst to the Stepps at the time, on September 29, the Oklahoma State Department of Education ("OSDE") issued a letter to TPSD and Lockhart advising that Talihina Elementary's policy of segregating fifth-grade classes on the basis of

gender violated federal civil rights laws, including Title IX, and directing integration of fifth-grade classes by no later than October 10, 2022. [*Id.* ¶¶ 138-41; Doc. 93-3]. In response to questions from aggravated parents regarding the forced integration, Anderson name-dropped plaintiffs, pressed her view that their allegations against McClain were unsubstantiated, and lamented that plaintiffs had caused an unwanted disruption by contacting OSDE. In a meeting with Mr. Stepp on October 10, Anderson accused those parents of lying about her above-mentioned communications. She also contended that Mr. Stepp was a "liar" and accused plaintiffs of "inciting" and "encouraging" violence against Talihina Elementary. [Doc. 93, ¶¶ 147-52].

J.S. returned to his first full day of integrated classes on October 12, 2022. For at least two of his afternoon classes, Blair—who was also a fifth-grade social studies teacher—required J.S. to sit alone on the floor despite a desk being available. [*Id.* ¶ 333]. The following week, Mr. Stepp approached Blair during J.S.'s basketball game to inquire about his son being forced to sit on the floor. [*Id.* ¶ 159]. In response, Blair engaged in a public, defamatory, profanity-laced tirade against plaintiffs and threatened physical violence. [*Id.* ¶ 160 (*e.g.*, "Why don't you just bring you're a** outside?" and "You just need to keep your f*cking mouth shut" and "[J.S.] is a liar.")]. Blair and his family members were eventually escorted from the gym by school officials and lingered outside for some time. The Stepp family exited through a back door so as to avoid further confrontation. [*Id.* ¶ 162-64]. Following the 2022-2023 school year, the Stepps withdrew their children from Talihina Elementary—the only public school in their vicinity—because they felt they could not safely report sexual

harassment or bullying if and/or when such issue arose in the future. To date, J.S. and his four younger siblings remain homeschooled. [*Id*. ¶¶ 167-69].

### B. SUMMARY OF PERTINENT PLEADINGS

On March 4, 2025, the court held an in-person hearing and heard oral arguments from all parties on the pending dismissal pleadings. *See* [Doc. 120]. At the hearing, counsel for plaintiffs voluntarily abandoned the EEOA claim (Count Eight) in its totality and the defamation claim (Count Twelve) as asserted against TPSD. [*Id*.]. The SAC accordingly asserts thirteen operative counts against the moving defendants, seeking relief in the form of actual and punitive damages:

> **Count One** alleges a sex-segregation claim under Title IX, asserting that TPSD violated J.S.'s statutory right to be free from gender discrimination by implementing a policy to segregate fifth grade students at Talihina Elementary on the basis of sex;

> **Count Two** alleges a sexual harassment claim under Title IX, asserting that TPSD violated J.S.'s statutory right to be free from sexual harassment by failing to act against McClain's known pattern of harassment toward J.S.;

> **Count Three** alleges a retaliation claim under Title IX, asserting that TPSD retaliated against plaintiffs for filing a Title IX complaint by engaging in acts to interfere with plaintiffs' statutory and constitutional rights under the Title IX process;

> **Count Four** alleges a municipal liability claim under § 1983, asserting that TPSD violated J.S.'s statutory rights under Title IX and his constitutional rights to equal protection, procedural due process, and substantive due process by adopting, implementing, and enforcing an official policy of gender-based segregation;

> **Count Five** appears to allege supervisory liability claims under § 1983, asserting that Anderson and the Board Members violated J.S.'s statutory rights under Title IX and constitutional rights to equal protection, procedural due process, and substantive due process by ratifying and enforcing TPSD's unlawful segregation policy;

9

**039**

**Count Six** alleges retaliation claims under § 1983, asserting that Anderson, Blair, and Bryant retaliated against plaintiffs for filing a Title IX complaint and for criticizing their deficient Title IX investigation by engaging in acts to interfere with plaintiffs' statutory and constitutional rights under the Title IX process;

**Count Seven** alleges a conspiracy claim under § 1983, asserting that all moving defendants entered into an agreement to deprive plaintiffs of their constitutional and statutory rights under the Title IX process;

**Count Nine** alleges retaliation claims under § 1983, asserting that TPSD and the Board Members retaliated against plaintiffs for filing a Title IX complaint by engaging in acts to interfere with plaintiffs' statutory and constitutional rights under the Title IX process;

**Count Ten** alleges claims for negligence, negligent supervision and negligence *per se*, asserting that TPSD and the Board Members breached four basic duties owed to J.S. under Oklahoma law;

**Count Twelve** alleges defamation claims under Oklahoma law, asserting that Anderson and Blair knowingly made false statements about plaintiffs to third parties;

**Count Thirteen** alleges a gender discrimination claim under Oklahoma law, asserting that TPSD, Lockhart, Anderson and Blair required or made part of J.S.'s curriculum certain discriminatory principles prohibited by 70 O.S. § 24-157;

**Count Fourteen** alleges an assault claim under Oklahoma law, asserting that Blair physically rushed the Stepps during an elementary school basketball game, threatened them with immediate physical harm, made assaulting remarks, and recruited others to join his actions;

**Count Fifteen** alleges a civil conspiracy claim under Oklahoma law, asserting that all moving defendants entered into an agreement to deprive plaintiffs of statutory protections under Title IX and 70 O.S. § 24-157.

The moving defendants filed their Motion on December 19, 2024. In their Motion, they argue that Counts One and Two are legally deficient and subject to Rule 12(b)(6) dismissal; Counts Three, Four, Five, Six, Seven, Nine, and Fifteen are not remotely supported by factual allegations and should be dismissed for failure to state a claim; the individual moving defendants are entitled to qualified immunity on

plaintiffs' § 1983 claims; Count Thirteen must be dismissed because there is no private right of action under 70 O.S. § 24-157; all moving defendants are entitled to immunity under the GTCA on plaintiffs' state law claims; and Counts Twelve and Fourteen are barred by the applicable limitations period.

## II.    STANDARD FOR MOTIONS TO DISMISS

Dismissal pursuant to Rule 12(b)(6) "'is appropriate if the complaint alone is legally insufficient to state a claim.'" Serna v. Denver Police Dep't, 58 F.4th 1167, 1169 (10th Cir. 2023) (quoting Brokers' Choice of Am., Inc. v. NBC Universal, 861 F.3d 1081, 1104-05 (10th Cir. 2017)). When considering whether a claim should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving part. S.E.C. v. Shields, ("Shields") 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief about the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific

**041**

task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, at 678-79. The Tenth Circuit has observed that the *Twombly/Iqbal* pleading standard is intended to "ensure[ ] that defendants know 'the actual grounds of the claim against them,'" in order for defendants to "prepare a defense." Bryson v. Gonzalez, 534 F.3d 1282, 1287 (10th Cir. 2008). In the context of § 1983 actions involving multiple claims against multiple defendants, the Tenth Circuit has further stated that "it is particularly important" for a complaint to "make clear exactly *who* is his alleged to have done *what* to *whom*" so that each defendant has "fair notice as to the basis of the claims" against them. Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original) (citation omitted).

### III.  CLAIMS FOR VIOLATIONS OF TITLE IX

Plaintiffs asserts three causes of action against TPSD under Title IX, alleging gender discrimination (Count One), sexual harassment (Count Two), and retaliation (Count Three). Title IX prohibits educational institutions that receive federal assistance from engaging in discrimination on the basis of sex. *See* 20 U.S.C. § 1681(a). Congress enacted Title IX with two principal objectives in mind: "[T]o avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979). Thus, the Supreme Court has recognized an implied private right of action to enforce Title IX against a recipient of federal education funds. *See* id. at 717; *see also* Franklin v. Gwinnett Cty. Pub. Schs., 503

U.S. 60, 76 (1992) (holding a damages remedy is available for an action brought by private parties to enforce Title IX).

### A.   COUNT ONE | GENDER SEGREGATION

To state a Title IX claim for gender segregation, a plaintiff must allege facts showing: (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex. Seamons v. Snow, 84 F.3d 1226, 1231 (10th Cir. 1996) (citations omitted). Count One arises from allegations that TPSD, as a program that receives federal funds conditioned upon compliance with Title IX, unlawfully discriminated against J.S. by implementing a policy providing for fifth-grade classes separately at Talihina Elementary on the basis of sex, and by requiring and refusing student participation in classes on the basis of sex. TPSD contends Count One should be dismissed under Rule 12(b)(6) because plaintiffs fail to allege facts involving any sexual harassment of J.S. by a school employee. [Doc. 100 at 15]. Such contention is irrelevant, however, as Count One arises from allegations of gender segregation rather than sexual harassment. As for the claim asserted, plaintiffs focus primarily on the conceded fact that TPSD segregated fifth-grade classes at Talihina Elementary explicitly on the basis of sex. TPSD's purported conduct is directly prohibited by Title IX. *See* 20 U.S.C. § 1681(a). The court concludes that plaintiffs have sufficiently alleged facts to state a plausible Title IX claim against TPSD for discrimination on the basis of gender. The court denies TPSD's Motion as to Count One.

### B.  COUNT TWO | DELIBERATE INDIFFERENCE TO TEACHER-ON-STUDENT SEXUAL HARASSMENT

Sexual harassment is a form of discrimination on the basis of sex and is actionable under Title IX. <u>Escue v. N. Okla. College</u>, 450 F.3d 1146, 1152 (10th Cir. 2006). A school district that receives federal funds is not vicariously liable to its students for all sexual harassment caused by teachers, but a student may hold a school liable for its own misconduct. <u>Forth v. Laramie Cty. Sch. Dist. No. 1</u>, 85 F.4th 1044, 1053 (10th Cir. 2023) (citations omitted). A student seeking relief under this theory must demonstrate:

> (1) an appropriate person . . . with authority to take corrective action to end the discrimination (2) had actual knowledge of discrimination in the recipient's programs but (3) fail[ed] adequately to respond in a manner amounting to deliberate indifference, and (4) the harassment was so severe, pervasive and objectively offensive that it . . . deprived the victim of access to the educational benefits or opportunities provided by the school.

<u>Id</u>. (alterations in original) (citations and quotations omitted). TPSD contends that Count Two should be dismissed under Rule 12(b)(6) because plaintiffs cannot prevail on the second and third elements.

As to the second element, TPSD asserts the SAC fails to allege facts showing the school district was deliberately indifferent to McClain's "known" sexual harassment. [Doc. 100 at 16]. But the SAC clearly alleges facts indicating TPSD had actual notice of McClain's harassment of J.S. by August 25, 2022. [Doc. 93, ¶¶ 34-41]. Despite placing a school official outside McClain's classroom to monitor for inappropriate behavior, plaintiffs allege McClain's harassment of J.S. continued without any administrative intervention. [*Id*. ¶¶ 42-45]. After meeting with Supt.

14

**044**

Lockhart, Principal Anderson, McClain, and McLemore on August 29, 2022, plaintiffs submitted a Title IX complaint against McClain. [*Id.* ¶¶ 71-74]. These factual allegations permit an inference that TPSD, by and through appropriate persons with authority to take corrective action, had actual knowledge of McClain's purported harassment of J.S. prior to the filing of plaintiffs' complaint.

Turning to the third element, TPSD contends the SAC fails to allege facts showing the school district was "deliberately indifferent" to McClain's alleged conduct because TPSD designated multiple employees to investigate plaintiffs' complaint. [Doc. 100 at 16-17]. "Deliberate indifference exists where the response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." <u>Forth</u>, 85 F.4th at 1069 (internal citations and quotations omitted). The SAC alleges that, because TPSD neither had a policy prohibiting gender discrimination nor a grievance procedure for resolving Title IX complaints, school officials undertook an impromptu, biased, and deficient investigation which was clearly unreasonable under the circumstances. [*Id.* ¶¶ 193-94]. This otherwise conclusory assertion is supported by the following factual allegations: Lockhart and Anderson refused to provide plaintiffs with any information regarding the Title IX process or their rights thereunder [*Id.* ¶¶ 66-67]; as a designated Title IX officer, McLemore admittedly was unfamiliar with relevant grievance procedures [*Id.* ¶¶ 70-71]; Anderson withheld pertinent information from McLemore during the Title IX investigation [*Id.* ¶¶ 108-113]; TPSD officials withheld information requested by plaintiffs throughout the Title IX process [*Id.* ¶¶ 77, 81-92]; following McLemore's

15

**045**

resignation, the newly designated Title IX officers—Blair and Bryant—failed to interview J.S., his parents, or any students in the all-boys class [*Id*. ¶¶ 123-24]; and Anderson wrongfully disclosed plaintiffs' identities as the Title IX complainants to other parents of Talihina Elementary students [*Id*. ¶ 147].

Although "the minimum required response to avoid 'deliberate indifference'" is "a legitimate investigation," Lang v. Herrara, No. 12-CV-392-JHP-TLW, 2013 WL 4500739 at *5 (N.D. Okla. Aug. 21, 2013), it would be unreasonable to view TPSD's purported response as "legitimate." The court finds the alleged acts and omissions attributed to TPSD in Count Two to be "clearly unreasonable in light of the known circumstances." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 643 (1999). As plaintiffs' allegations permit an inference that TPSD was deliberately indifferent in its response to their sexual harassment complaint, the court concludes that plaintiffs have stated a plausible Title IX claim against TPSD for deliberate indifference to sexual harassment. The court denies TPSD's Motion as to Count Two.

## C.   COUNT THREE | RETALIATION UNDER TITLE IX

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). To state a claim for retaliation under Title IX, plaintiffs must allege facts showing (1) they engaged in protected opposition to discrimination, (2) a reasonable person would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.

16

**046**

Id. at 173-74. TPSD challenges only the second prong under Rule 12(b)(6), arguing that none of plaintiffs' allegations amount to a response which a reasonable person would interpret as materially adverse or as an act which would chill a reasonable individual from continuing to engage in protected conduct. [Doc. 100 at 25].

The SAC plainly asserts that TPSD, by and through the conduct of school officials, undertook actions in response to the Stepp's Title IX complaint that were intended to be, and in fact were, materially adverse to plaintiffs' protected interests. Specifically, plaintiffs allege that TPSD removed J.S. from McClain's classroom— over the Stepp's objections and without providing an equitable educational alternative—immediately following the Stepp's submission of the Title IX complaint [Doc. 93, ¶ 1, 94-98, 102-05]; Anderson unlawfully disclosed to third parties plaintiffs' identities as the complainants [*Id.* ¶ 148];[7] Anderson and Blair circulated defamatory statements about plaintiffs in relation to the Title IX complaint and underlying allegations [*Id.* ¶¶ 147, 149, 152, 160]; and, following his contribution to the purportedly deficient Title IX investigation, Blair assaulted the Stepps at a school function after forcing J.S. to sit alone on a classroom floor despite a desk being available [*Id.* ¶¶ 153-60]. Accordingly, the court concludes plaintiffs have stated a plausible Title IX retaliation claim against TPSD. The court denies the school district's Motion as to Count Three.

---

[7] Plaintiffs correctly note that Anderson's purported disclosures directly violate Title IX's rules on retaliation. [Doc. 105 at 16 (*citing* 34 C.F.R. § 106.71(a))]. *See also* 34 C.F.R. §§ 106.45(b)(5), (7).

## IV.    CLAIMS FOR § 1983 VIOLATIONS

Plaintiffs assert five causes of action under § 1983, alleging municipal liability (Count Four), supervisory liability (Count Five), conspiracy (Count Seven), and retaliation (Counts Six and Nine).

### A.    INTRODUCTION

A successful § 1983 plaintiff must show: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The moving defendants do not dispute that they were acting under color of state law; thus, the key issue is whether plaintiffs have sufficiently alleged the purported constitutional deprivations.

### 1.    Preemption

To the extent plaintiffs purport to hold any of the moving defendants liable under § 1983 for violations of their statutory rights under Title IX, plaintiffs are precluded from doing so pursuant to the comprehensive remedies available under Title IX. See Seamons, 84 F.3d at 1233 ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.") (quoting Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20 (1981)).

### 2.    Distinction Between Individual and Official Capacity Claims

As noted, plaintiffs seek to hold the individual moving defendants liable under § 1983 in their individual (or personal) capacities *only*. "Personal capacity suits seek

to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham ("Graham"), 473 U.S. 159, 165-66 (1985). "[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal asserts, a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself." Id. at 166.

On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Id. Thus, to hold the individual defendant liable under § 1983 in his or her individual capacity, plaintiffs must allege facts to establish each defendant's personal involvement in the purported deprivation. *See* Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 768 (10th Cir. 2013). More is required to establish official capacity liability, however, "for a [municipality] is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Graham, 473 U.S. at 166 (internal citations omitted). With this distinction in mind, it is clear that plaintiffs' § 1983 claims against the individual defendants in their personal capacities cannot lead to imposition of fee liability upon TPSD. *See* id. at 167. Such a result would be inconsistent with the well-settled

principle that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).[8]

### 3. Qualified Immunity

The individual moving defendants are entitled to assert, and have asserted, the defense of qualified immunity as to all four § 1983 claims pending against them. *See* Maresca v. Bernalillo Cty., 804 F.3d 1301, 1307 (10th Cir. 2015) ("An official [sued in their individual capacity] may plead an affirmative defense of qualified immunity."). "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). When a defendant asserts qualified immunity at the motion to dismiss phase, the plaintiff "must allege facts sufficient to show (assuming they are true) that the [1] defendant plausibly violated their constitutional rights, and that [2] those rights were clearly established at the time" of the defendant's alleged conduct. Robbins, 519 F.3d at 1249.[9]  The court

---

[8] At its outset, the SAC notes that, "[i]n omitting from this amended complaint their official capacity claims against the individual defendants, [p]laintiffs have relied on the position of [d]efendants, including TPSD itself, that TPSD is the proper entity against which to bring their official capacity claims, that TPSD has capacity to sue and be sued on these claims, and that [p]laintiffs' prior official capacity claims against the individual [d]efendants merely duplicated the claims against TPSD." [Doc. 93 at 1 & n.2 (*citing* Doc. 29 at 13-14)]. While a § 1983 claim asserted against a school district and one or more school employees sued in their official capacity is unnecessarily duplicative, it is well-settled that a defendant school district **cannot** be held liable under a § 1983 claim asserted **only** against one or more school employees in their **individual capacity**. Conversely, a defendant school district **can** be subject to liability on a § 1983 claim asserted **only** against one or more school employees in their **official capacity**.

[9] A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam) (quotations omitted). A relevant Supreme Court or Tenth Circuit decision is alone sufficient to establish a right for purposes of qualified immunity. A.N. v. Syling, 928 F.3d 1191, 1197 (10th Cir. 2019).

**050**

may assess these two inquiries in any order. *See* <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). In making this assessment, the court must construe the SAC in the light most favorable to plaintiffs, accept all well-pleaded allegations as true, and draw all reasonable inferences in plaintiffs' favor. *See* <u>Bella v. Chamberlain</u>, 24 F.3d 1251, 1254 (10th Cir. 1994). If plaintiffs fail to satisfy either prong, the court must grant qualified immunity. *See* <u>Medina v. Cram</u>, 252 F.3d 1124, 1128 (10th Cir. 2011).

### 4.    § 1983 Claims for Equal Protection Violations

The Fourteenth Amendment prohibits States from denying "any person within its jurisdiction the equal protection of the laws." <u>U.S. Const. amend. XIV, § 1</u>. Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under § 1983. <u>Murrell v. Sch. Dist. No. 1, Denver</u>, 186 F.3d 1238, 1249 (10th Cir. 1999). Different types of equal protection claims call for different forms of review. A claim that a state actor discriminated on the basis of a suspect (*e.g.*, race), quasi-suspect (*e.g.*, gender), or non-suspect classification calls for strict, intermediate, or rational basis scrutiny—respectively. <u>Brown v. Montoya</u> ("<u>Montoya</u>"), 662 F.3d 1152, 1172 (10th Cir. 2011). But in each instance, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1312 (10th Cir. 1998). "One who alleges such an equal protection violation has the burden of proving the existence of purposeful discrimination causing an adverse effect." <u>Ashaheed v. Currington</u>, 7 F.4th 1236, 1250 (10th Cir. 2021). Conclusory allegations without facts that refer to a particular

person or persons treated differently are insufficient to state a claim. Montoya, 662 F.3d at 1173. Moreover, to permit municipal liability for an alleged equal protection violation, the complaint must plausibly suggest the plaintiff's injuries were the result of a discriminatory policy. Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1146 (10th Cir. 2023).

### 5.    § 1983 Claims for Procedural Due Process Violations

The Fourteenth Amendment also forbids States from depriving an individual of life, liberty, or property without due process of law. Coutoure v. Bd. of Educ. of Albuquerque Pub. Schs., 535 F.3d 1243, 1256 (10th Cir. 2008). However, "the range of interests protected by the procedural due process clause is not infinite." Bd. of Regents v. Roth ("Roth"), 408 U.S. 564, 570 (1972). The procedural due process clause, however, does not safeguard an infinite number of interests; rather "[a] person alleging that he has been deprived of his right to procedural due process must prove two elements: [1] that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and [2] that he was not afforded an appropriate level of process." Coutoure, 535 F.3d at 1256 (citing Roth, 408 U.S. at 570) (add'l citations omitted).

### 6.    § 1983 Claims for Substantive Due Process Violations

In certain limited circumstances, the State is obligated not just to limit its own deprivations of liberty and property interests, but to affirmatively "ensure that those interests do not come to harm through other means." Rost v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1125-26 (10th Cir. 2008). When government conduct does

**052**

not touch on a fundamental right, a cognizable due process claim exists only where the conduct is so egregious that it "shocks the conscience." Seegmiller v. LaVerkin City, 528 F.3d 762, 767 (10th Cir. 2008). Conduct that shocks the judicial conscience "is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" Id. (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). This "requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort[.]" Perez v. Unified Gov't of Wyandotte Cty., 432 F.3d 1163, 1168 & n.4 (10th Cir. 2005). Whether conduct shocks the conscience is a question of law for the court. Id.

### B.   COUNT FOUR | MUNICIPAL LIABILITY

Municipal liability of a governmental entity, such as TPSD, does not arise under § 1983 "for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Liability may only be imposed upon a governmental entity "when the enforcement of [its] policies or customs by [its] employees causes a deprivation of a person's federally protected rights." Dodds v. Richardson, 614 F.3d 1185, 1202 (10th Cir. 2010). To state a §1983 claim for municipal liability, a plaintiff must allege: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. Cty. Bd. of Cty. Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998). An entity cannot be held liable under § 1983 "unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's

deprivation of federal rights." <u>Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown</u>, 520 U.S. 397, 403 (1997). As to the first element, the court finds that plaintiffs have sufficiently alleged an official policy maintained by TPSD of segregating fifth-grade classes at Talihina Elementary on the basis of gender. *See* <u>Bryson v. City of Okla. City</u>, 627 F.3d 784, 788 (10th Cir. 2010) (listing all forms a "municipal policy or custom" may take).

Turning to the second element, plaintiffs must allege facts showing "a direct causal link between the policy or custom and the injury alleged." <u>Id</u>. (internal quotation marks omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." <u>Waller v. City & Cty. of Denver</u>, 932 F.3d 1277, 1284 (10th Cir. 2019). In Count Four, plaintiffs claim that TPSD violated J.S.'s constitutional rights to equal protection, procedural due process, and substantive due process.

### 1.   Alleged Equal Protection Violation

The injury forming the basis of plaintiffs' equal protection claim in Count Four is McClain's sexual harassment. [Doc. 93, ¶ 219 ("By and through the actions of [ ] McClain, TPSD deprived J.S. of . . . clearly established rights to . . equal protection"), ¶ 223 ("McClain sexual harassment of J.S. was sufficiently severe and pervasive to create a hostile learning environment for J.S. and otherwise deprive J.S. of fair and equitable access to a public education")]. The court acknowledges that sexual assault

**054**

and harassment can serve as the underlying equal protection violation for municipal liability. Rost, 511 F.3d at 1124 ("A school district's liability for sexual harassment under the [e]qual [p]rotection clause is analyzed under a municipal liability framework."). Here, plaintiffs assert that TPSD officials "intentionally separated their fifth-grade male students (including J.S.) from their fifth-grade female students and [ ] did so, in whole or in part, based on 'offensive and outdated stereotypes about boys and girls, their behavior, and the discipline and instruction permissible for or required for each." [Doc. 105 at 20 (*citing* Doc. 93, ¶¶ 21-24; Doc. 93-1)]. The SAC alleges that, during a phone call with the Stepps, McClain "acknowledged" his conduct was "generally inappropriate" for a fifth-grade class, and stated he would not have used certain terms or raised certain topics "had fifth grade *girls* been present." [Doc. 93, ¶ 64]. Moreover, McClain explained in a written statement that "having the students in an all-boy setting" allowed him to "have some frank conversations that could not take place in a boy/girl mixed setting." [*Id*. ¶ 25]. The court finds plaintiffs have sufficiently alleged a direct causal link between McClain's sexual harassment of J.S. and TPSD's sex-segregation policy. Therefore, plaintiffs have stated a plausible claim for an equal protection violation against TPSD in Count Four.

### 2.    Alleged Procedural Due Process Violation

The injury forming the basis of plaintiffs' procedural due process claim in Count Four is TPSD's deficient handling of the Title IX process. [Doc. 93, ¶ 220 ("By and through its deliberate indifference and retaliation in response to [p]laintiffs' formal complaint under Title IX, TPSD deprived J.S. of . . . clearly established rights

to . . . equal protection"), ¶¶ 94, 101 ("[I]n response to [p]laintiffs' report of harassment, TPSD removed J.S. from the classroom" and because "there were no other in-school options—no integrated classroom, and no boys room taught by anyone other than McClain—[p]laintiffs had no choice but to accept [d]efendants' proposal for" a "modified schedule" wherein "J.S. would attend only one period of classroom instruction" and "for the remainder of the school day, be kept in the library")]]. The due process rights in question include J.S.'s property interest in a public education and liberty interest in his reputation Talihina Elementary. [*Id.* ¶¶ 217, 228]. It is well-settled that "public school students have a protected property interest in public education and a liberty interest in their reputations, and therefore are entitled to certain procedural due process protections within the educational context." <u>Coutoure</u>, 545 F.3d at 1256 (*citing* <u>Goss v. Lopez</u>, 419 U.S. 565, 574 (1975)).

Though the SAC alleges a failure of due process on a most basic level, the court ventures no further into this analysis because plaintiffs fail to draw any link between this arbitrary deprivation of J.S.'s property rights and TPSD's segregation policy. Without more, the SAC does not state a viable procedural due process claim in Count Four. The court therefore grants TPSD's Motion as to the underlying procedural due process violation in Count Four.

### 3. Alleged Substantive Due Process Violation

The Supreme Court recognizes two types of substantive due process claims: "(1) claims that the government has infringed a 'fundamental' right, and (2) claims that government action deprived a person of life, liberty, or property in a manner so

26

**056**

arbitrary it shocks the judicial conscience." <u>Doe v. Woodard</u>, 912 F.3d 1278, 1300 (10th Cir. 2019) (internal citations omitted). Here, plaintiffs have pled the latter based on allegations that TPSD permitted McClain to continue teaching fifth graders despite having actual knowledge of his targeted abuse of J.S. [Doc. 105 at 18]. *See* <u>Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist.</u>, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a schoolteacher violates a student's substantive due process rights.").

TPSD argues plaintiffs have not stated a plausible substantive due process violation because their allegations "fall well short" of "the extremely high threshold required for the conduct of a defendant to meet the 'shocks the conscience' standard." [Doc. 100 at 20]. The court agrees, as the SAC fails to allege facts that meet the "high level of outrageousness" standard. *See* <u>Perez</u>, 432 F.3d at 1168 & n.4. The SAC only alleges that TPSD placed a hall monitor outside of McClain's classroom upon notice of his purported harassment and, three days later, removed J.S from said classroom. [Doc. 93, ¶¶ 42, 71-74]. Moreover, plaintiffs fail to draw a link between TPSD's segregation policy and TPSD permitting McClain to continue teaching J.S. after receiving notice of his targeted harassment of J.S. Without more, the SAC does not state a viable substantive due process claim in Count Four. The court therefore grants TPSD's Motion as to the underlying substantive due process violation in Count Four.

## C. COUNT FIVE | SUPERVISORY LIABILITY

Plaintiffs allege that, by enforcing the school district's unlawful segregation policy, the Board Members and Anderson deprived J.S. of his clearly established

constitutional rights to equal protection, procedural due process, and substantive due process. [Doc. 93, ¶ 230]. Asserting a § 1983 claim based on supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." Dodds, 614 F.3d at 1199. Since "vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Thus, to establish supervisory liability, plaintiffs must show that "(1) [each] defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Montoya, 662 F.3d at 1164 (quoting Dodds, 614 F.3d at 1199). Here, only the latter two elements are in dispute.

### 1.    Alleged Equal Protection Violations

To state a supervisory liability claim under § 1983 for violation of the equal protection clause, plaintiffs must show that each "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of the law's differential treatment of a particular class of person." SECSYS, LLC v. Vigil ("Vigil"), 666 F.3d 678, 688 (10th Cir. 2012); Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (noting the equal protection clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."). In other words,

28

**058**

"a discriminatory effect against a group or class may flow from state action, it may even be a foreseen (or known) consequence of state action, but it does not run afoul of the Constitution unless it is an intended consequence of state action." Vigil, at 658.

The injury forming the basis of plaintiffs' equal protection claim in Count Five is the Board Members' and Anderson's adoption and enforcement of TPSD's segregation policy. [Doc. 93, ¶ 230 ("By adopting, implementing, and enforcing a policy of segregation based on sex . . . [the] Board Members (Russell, Woods, Crank, Blue, Moreland, and Lockhart) and [ ] Anderson deprived J.S. of . . . clearly established rights to . . . equal protection"), ¶ 231 ("Until receiving an order from OSDE to correct its violations of federal law by integrating its classrooms, [d]efendants knowingly, intentionally, and/or recklessly violated both state and federal law and failed to provide to J.S. and option for an equitable, sex-integrated learning environment")]. Anderson and the Board Members contend plaintiffs fail to allege facts which would plausibly show that any alleged injury to J.S. was a result of intentional disparate treatment based on his status as a male student. [Doc. 100 at 23]. The court considers these arguments on a defendant-by-defendant basis.

### i.    *Anderson & Lockhart*

The SAC alleges that Anderson and Lockhart spearheaded the implementation of TPSD's segregation policy at Talihina Elementary [Doc. 93, ¶ 21], and did so based on "offensive and outdated stereotypes about boys and girls, their behavior, and the discipline and instruction permissible for or required for each." [Doc. 105 (*citing* Doc. 93, ¶¶ 21-24)]; *see also* [Doc. 93-1 (OSDE letter expressing "concern[ ] about

**059**

statements made by [TPSD] educators indicating that there was in fact an intent to treat Talihina's 5th grade boys and girls differently.")]. Plaintiffs assert this directly resulted in the disparate treatment of J.S. on the basis of sex, including McClain "disciplin[ing]" J.S. with inappropriate harshness and exposing J.S. to "frank conversations" because he was a male student stuck in the "boys' room." [*Id.* (*citing* Doc. 93, ¶¶ 25-26)]. Indeed, McClain has admitted as much in writing. [Doc. 93, ¶ 25]. The court finds plaintiffs have stated a plausible § 1983 claim for an equal protection violation against Anderson and Lockhart, as the SAC alleges these defendants' personal actions had a discriminatory effect and were motivated by a discriminatory purpose. Anderson and Lockhart are not entitled to qualified immunity under these circumstances.

### ii.    *Blue, Crank, Lockhart, Moreland, Russell, Woods*

As members of the Board, the above-named defendants were responsible for the governance and administration of TPSD, including Talihina Elementary. [Doc. 93, ¶¶ 7-11 (*citing* 70 O.S. § 5-117(A))]. The SAC alleges the Board Members were aware of TPSD's segregation policy and either explicitly or tacitly approved of the same [*Id.* ¶ 23]. Plaintiffs assert this directly resulted in the disparate treatment of J.S. on the basis of sex for the same reasons stated in the previous subsection. Accordingly, the court finds plaintiffs have stated a plausible § 1983 claim for an equal protection violation against the Board Members, as the SAC alleges these defendants' personal actions had a discriminatory effect and were motivated by a discriminatory purpose. The Board Members are not entitled to qualified immunity under these circumstances.

### 2.    Alleged Procedural Due Process Violations

The injury that appears to form the basis of plaintiffs' procedural due process claim in Count Five is the complete deprivation of J.S.'s education arising from the Board Members' and Anderson's continued enforcement of TPSD's segregation policy. [Doc. 93, ¶ 235 ("As a result of [d]efendants' adoption (or ratification), implementation, enforcement, and approval of a policy of sex segregation, J.S. and [p]laintiffs have lost the benefits of the free public education to which J.S. is entitled")]. It is well-settled that J.S. has a "legitimate entitlement to a public education as a property interest which is protected by the [d]ue [p]rocess [c]lause. . ." Goss, 419 U.S. at 574. Anderson and the Board Members contend the SAC "simply does not contain any factual allegations regarding a situation implicating J.S.'s procedural due process rights[.]" [Doc. 100 at 21].

The Supreme Court has held that when a "complete deprivation of education" occurs—such as when a student accused of wrongdoing is removed from school for ten days or less—the student at minimum is entitled to "notice and . . . some kind of hearing," though the "timing and content of the notice and the nature of the hearing will depend on the appropriate accommodation of competing interests involved." Id. at 578-79. Here, J.S. was not accused of wrongdoing. He accused McClain of wrongdoing and, immediately after the Stepps submitted a Title IX complaint against McClain for sexual harassment, TPSD officials unilaterally removed J.S. from McClain's classroom for approximately six weeks without notice, without any type of hearing, and without providing alternative options for fair and equitable instruction.

31

**061**

[Doc. 93, ¶¶ 94-105]. Viewing these allegations in the light most favorable to plaintiffs, and accepting them as true, the court finds plaintiffs have stated a § 1983 claim for equal protection violations against Anderson and the Board Members. As established in the previous subsection, the Count Five defendants alone possessed the authority to enforce TPSD's segregation policy. Rather than provide the process owed after removing J.S. from McClain's classroom, Anderson and the Board Members chose to continue enforcing the facially unlawful segregation policy. They did so over the Stepp's objections and with knowledge that J.S. was receiving deficient, if any, educational instruction. The court consequently denies the Count Five defendants' Motion as to this underlying procedural due process violation.

### 3.    Alleged Substantive Due Process Violations

According to plaintiffs, the injury forming the basis of their substantive due process claim is the Board Members' and Anderson's deliberate indifference to McClain's known sexual harassment. *See* [Doc. 105 at 18 ("Plaintiffs have alleged activating for which [m]oving [d]efendants are directly responsible: the shocking conduct not of a third party, but of a school employee who [m]oving [d]efendants permitted to continue teaching fifth graders despite actual knowledge of his targeted abuse")]. There are no factual allegations in Count Five of the SAC to support plaintiffs' proposition. Indeed, in the context of § 1983 actions involving multiple claims against multiple defendants, "it is particularly important" for a complaint to "make clear exactly *who* is his alleged to have done *what* to *whom*" so that each defendant has "fair notice as to the basis of the claims" against them. Robbins, 519

F.3d at 1250. This pleading requirement it intended to "ensure[] that defendants know 'the actual grounds of the claim against them,'" in order for defendants to "prepare a defense." <u>Bryson</u>, 534 F.3d at 1287. Plaintiffs have failed to state a claim for a substantive due process violation in Count Five. The court grants the Count Five defendants' Motion as to the underlying substantive due process violation.

### D.   COUNTS SIX AND NINE | RETALIATION UNDER § 1983

"Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation and legal harassment, constitutes an infringement of that freedom." <u>Worrell v. Henry</u>, 219 F.3d 1197, 1212 (10th Cir. 2000), *cert denied*, 533 U.S. 916 (2001). The Tenth Circuit has adopted the following test to assess a claim of retaliation for exercising one's freedom of speech "against a defendant who is neither an employer nor a party to a contract with the plaintiff," as is the case here. <u>Id</u>. at 1213. Such a plaintiff must prove: "(1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." <u>Id</u>. at 1212 (citations omitted). Whether a person's exercise of constitutional freedoms would be chilled under the circumstances is a context-dependent question.[10]

---

[10] *See e.g.*, <u>Johnson v. Whitney</u>, 723 Fed. Appx. 587, 594-95 (10th Cir. 2018) (unpublished) (holding that where an inmate made approximately $7 per month and used those funds to purchase necessities, withholding $1.41 from his pay could be sufficiently chilling and was neither de minimus nor trivial); <u>McCook v. Spriner Sch. Dist.</u>, 44 Fed. Appx. 896, 903-05 (10th Cir. 2002) (unpublished)

The moving defendants dispute only the second element, claiming none of the facts alleged would "chill a reasonable individual from continuing to engage in protected activity." [Doc. 100 at 25]. The SAC sets forth the following allegations in, and in connection to, Counts Six and Nine: Anderson and Lockhart exercised authority in the decision to remove J.S. from his classroom and ultimately regulate him to the library, without live instruction, as a result of plaintiffs' Title IX complaint [Doc. 93, ¶¶ 95-13]; Anderson and Lockhart exercised authority in the decision to remove J.S. from his basketball team on a pretextual basis [*Id.* ¶¶ 103-04]; Anderson, Blair, Bryant, and the Board Members conducted a sham investigation and then attempted to force J.S. to either leave school or return to McClain's classroom [*Id.* ¶¶ 131-35]; Lockhart and Russell privately discussed how to handle plaintiffs' complaint and the allegations raised therein [*Id.* ¶ 109]; the Board Members refused to address concerns raised by the Stepps at a Board meeting with respect to McClain's behavior and the ongoing segregation policy [*Id.* ¶ 115-16]; Anderson disclosed plaintiffs' identities as the complainants to third parties and labeled plaintiffs as troublemaking liars after receiving a desegregation letter from OSDE [*Id.* ¶¶ 147-52]; Blair and Bryant embarrassed and punished J.S. upon his return to school and after the OSD letter by making him sit on the floor while his peers sat in chairs [*Id.* ¶¶ 154-58]; and Blair engaged in aggressive and threatening behavior toward plaintiffs' family at a school function after receiving the OSDE letter [*Id.* ¶¶ 139-63].

---

(finding plaintiffs could prevail on the second element where they alleged their child was forced to move to an out-of-state school after defendants suspended him in retribution for litigation).

### 1.    Count Six | Anderson, Blair, Bryant

The court finds that plaintiffs have stated a plausible § 1983 retaliation claim against Anderson, Blair, and Bryant. Viewing the factual allegations in the light most favorable to plaintiffs, it may be reasonably inferred that the alleged conduct by these three defendants caused plaintiffs an injury that would chill a person of ordinary firmness from filing a Title IX complaint for teacher-on-student sexual harassment. As plaintiffs' right to be free from retaliation for engaging in a protected activity was clearly established at the time of the purported violations, the Count Six defendants are not entitled to qualified immunity at this stage. Thus, the court denies the moving defendants' Motion as to Count Six.

### 2.    Count Nine | TPSD, Blue, Crank, Lockhart, Moreland, Russell, Woods

The court finds that plaintiffs have stated a plausible § 1983 retaliation claim against TPSD and Board Members. At the dismissal stage, plaintiffs' allegations support a reasonable inference that the Board Members were aware of the ongoing retaliation and, at best, failed to intervene—or, at worst, subtly contributed to its continuation. Viewing the factual allegations in the light most favorable to plaintiffs, it may be reasonably inferred that the alleged conduct of TPSD, by and through the Board Members, caused plaintiffs an injury that would chill a person of ordinary firmness from filing a Title IX complaint. As plaintiffs' right to be free from retaliation for engaging in a protected activity was clearly established at the time of the purported violations, the individual Count Nine defendants are not entitled to

**065**

qualified immunity at this stage. Thus, the court denies the moving defendants' request for Rule 12(b)(6) dismissal of Count Nine.

### E.    COUNT SEVEN | CONSPIRACY UNDER § 1983

At the motion to dismiss stage, a plaintiff need only allege facts demonstrating "an agreement upon a common, unconstitutional goal" and "concerted action" taken "to advance that goal." Janny v. Gamez, 8 F.4th 883, 919 (10th Cir. 2021) (citation omitted). Recognizing that "direct evidence of an agreement to join a conspiracy is rare," the Tenth Circuit has held that a defendant's "assent can be inferred from acts furthering the conspiracy's purpose." Bledsoe v. Carreno, 53 F.4th 589, 609 (10th Cir. 2022). An express agreement is consequently unnecessary. *See* Frasier v. Evans, 992 F.3d 1003, 1024-05 (10th Cir. 2021). Further, while "[t]he participants int eh conspiracy must share the general conspiratorial objective," they "need not known all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result." Id. at 1024 (*quoting* Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990)).

The SAC alleges the specific goal of this purported conspiracy was to "deprive" plaintiffs of their "constitutional rights and of statutory rights intended to secure the same (*e.g.*, under Title IX)." [Doc. 93, ¶ 43]. Plaintiffs contend the moving defendants' subsequent actions evidence this agreement to achieve an unlawful purpose. [Doc. 105 at 23]. Such actions include at least three meetings between Anderson and McClain, McClain and Lockhart, and Lockhart and Russell in which the participants expressly discussed the evidence, allegations, and Anderson's premeditated refusal

**066**

to provide plaintiffs with information pertinent to the Title IX investigation. [*Id*.
(*citing* Doc. 93, ¶¶ 109, 111-13)].

The SAC further identifies specific actions the moving defendants allegedly
took to carry out the plan, including but not limited to unlawfully withholding
information from plaintiffs regarding their rights under the Title IX process;
unlawfully withholding from McLemore (Title IX officer) and plaintiffs pertinent
information gathered during the Title IX process; failing to interview the Stepps, J.S.,
or any corroborating witnesses as part of the Title IX investigation; and failing to
permit plaintiffs' review of any evidence or resulting investigative findings before
closing the investigation. While these allegations are sufficient to allege the existence
of a conspiracy to violate plaintiffs' statutory rights under Title IX, plaintiffs are
preempted from holding the moving defendants liable under § 1983 for purported
violations of Title IX. *See* <u>Seamons</u>, 84 F.3d at 1233. Notwithstanding, plaintiffs'
assertion that each individual moving defendant participated in the conspiracy
requires the court to take a closer look at the facts alleged in the SAC.

### 1.    Anderson | Principal of Talihina Elementary

The court finds plaintiffs have adequately alleged that Anderson (1) personally
participated in the conspiracy to violate plaintiffs' rights; (2) joined, and perhaps
engendered, the conspiracy by speaking with McClain and Lockhart sometime
between August 25 and August 29, 2022 to coordinate how to handle the Title IX
complaint; and (3) acted to further the conspiracy by purposefully withholding
documentation of her conversations with McClain about his complained-of conduct,

37

**067**

by disclosing plaintiffs' identities as the complainants to other TPSD parents, and by telling other TPSD parents that J.S.'s allegations against McClain were unsubstantiated. The court further finds that plaintiffs have stated plausible § 1983 claims for equal protection and procedural due process violations against Anderson in Count Seven, as supported by Count Five.

### 2.  Lockhart | TPSD Superintendent & Board Member

The court finds plaintiffs have adequately alleged that Lockhart (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined, and perhaps engendered, the conspiracy by speaking with McClain and Anderson sometime between August 25 and August 29, 2022 to coordinate how to handle the Title IX complaint; and (3) acted to further the conspiracy by prohibiting McLemore from participating in the August 29 meeting with the Stepps and by declining to take any action on concerns raised by the Stepps and other TPSD parents at the September 6, 2022 Board meeting. The court further finds that plaintiffs have stated plausible § 1983 claims for equal protection and procedural due process violations against Lockhart in Count Seven, as supported by Count Five.

### 3.  Russell | President of the Board

The court finds plaintiffs have adequately alleged that Russell (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined the conspiracy by meeting with Lockhart and Anderson in late-August 2022 to discuss how to handle plaintiffs' Title IX complaint; and (3) acted to further the conspiracy by declining to take any action on concerns raised by the Stepps and other TPSD parents at the

September 6, 2022 Board meeting. The court further finds that plaintiffs have stated plausible § 1983 claims for equal protection and procedural due process violations against Anderson in Count Seven, as supported by Count Five.

### 4.    Blue, Crank, Moreland, Woods | Board Members

The court finds plaintiffs have adequality alleged that Blue, Crank, Moreland and Woods (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined the conspiracy when informed of plaintiffs' Title IX complaint and ensuing investigation; and (3) acted to further the conspiracy by installing Blair and Bryant as the new Title IX officers to complete a sham investigation and by declining to take any action on concerns raised by the Stepps and TPSD parents at the September 6, 2022 Board meeting. The court further finds plaintiffs have stated plausible § 1983 claims for equal protection and procedural due process violations against Blue, Crank, Moreland and Woods in Count Seven, as supported by Count Five.

### 5.    Blair and Bryant | Title IX Officers

The court finds plaintiffs have adequately alleged that Blair and Bryant (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined the conspiracy in early-September 2022 when they became Talihina Elementary's new Title IX officers; and (3) acted to further the conspiracy by conducting a sham Title IX investigation. However, there are no factual allegations in Count Seven to support the proposition that Blair and Bryant violated plaintiffs' constitutional rights to equal protection or due process. *See* <u>West</u>, 487 U.S. at 48 ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution . . ."). While

**069**

the commission of such violations are supported by specific allegations in Count Five as against Anderson and the Board Members, the allegations in Count Seven are insufficient to support the same finding as against Blair and Bryant. *See* <u>Robbins</u>, 519 F.3d at 1250; <u>Bryson</u>, 534 F.3d at 1287. The court concludes plaintiffs have failed to plausibly allege in Count Seven that Blair and Bryant deprived them of any constitutional rights. As plaintiffs have failed to state a § 1983 conspiracy claim against Blair and Bryant, Count Seven is dismissed for failure to state a claim against Blair and Bryant—who are consequently entitled to qualified immunity on the same.

## V.    CLAIMS FOR VIOLATIONS OF OKLAHOMA LAW

Plaintiffs assert five causes of action under Oklahoma law against the moving defendants, alleging negligence and negligent supervision (Count Ten), defamation (Count Twelve), violation of 70 O.S. § 24-157's prohibition against gender discrimination in public education (Count Thirteen), assault (Count Fourteen), and civil conspiracy (Count Fifteen).

### A.    INTRODUCTION / THRESHOLD ISSUES

The moving defendants contend the GTCA renders them immune from liability on all state law claims asserted in the SAC. Anderson and Blair additionally argue that Counts Twelve and Thirteen should be dismissed under Rule 12(b)(6) as such claims are barred by the applicable statute of limitations.

#### 1.    Immunity under the GTCA

Under the GTCA, only a governmental entity or political subdivision can be liable for a tort committed by an employee while acting within the scope of

employment. The GTCA precludes tort actions against "an employee of the state or political subdivision acting within the scope of his employment." 51 O.S. § 163(C); *see also* 51 O.S. § 152(12) (defining "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment of tasks lawfully assigned by a competent authority."). "An act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State, 2003 OK 2, ¶ 4, 63 P.3d 535, 537 (citations omitted). "A government employee acting within the scope of employment is relieved from private (individual) liability for tortious conduct, but when an employee acts outside the scope of employment the political subdivision is relieved from liability." Id. (*citing* Martin v. Johnson, 1998 OK 127, ¶ 28, 975 P.2d 889, 895). The concept of scope of employment is thus tied to whether the employee or the government entity may be liable for a particular act.

TPSD is a "political subdivision" to which the GTCA applies. 51 O.S. § 152(11)(b). And each individual moving defendant falls within the GTCA's definition of "employee." *See* 51 O.S. § 152(7) (defining "employee" as "any person who is authorized to act on behalf of a political subdivision . . ."). A suit against a political subdivision, as a suit against governmental employees, must be based upon the claimant presenting written notice of a claim within one year of the date the loss occurs, or the claim is forever barred. Hathaway v. State ex rel. Med. Research & Tech. Auth., 2002 OK 53, ¶ 8, 49 P.3d 740, 742 (*citing* 51 O.S. § 156(b)). On July 28, 2023, plaintiffs provided TPSD with written notice of their claims for negligence,

IIED, assault, "vicarious liability / *respondeat superior,*" and any tort claims available under 70 O.S. § 24-157. [Doc. 93-3 at 2-3]. The GTCA further provides that suit cannot be initiated against a political subdivision unless the claim has been denied in whole or in part. 51 O.S. § 157(A). Because TPSD did not respond to plaintiffs' formal notice, the claims therein were deemed denied by operation of law on October 26, 2023. [Doc. 93, ¶ 174]. Plaintiffs initiated this action within 180 days of that denial—*i.e.*, on April 23, 2024—as required by the GTCA. *See* 51 O.S. § 157(B).

### 2.    Counts Twelve and Fourteen are Barred by the Applicable Statute of Limitations

The notice requirements of the GTCA do not apply to tort claims against a governmental employee when the plaintiff's claims are based upon allegations that the employee's acts were outside the scope of his or her employment. Spencer v. Nelson, 2024 OK 63, ¶ 16, 557 P.3d 144, 150 (*citing* Pellegrino, ¶ 18, 63 P.3d at 150). Plaintiffs' claims for defamation against Anderson and Blair (Count Twelve) and for assault against Blair (Count Fourteen) are claims that as a matter of law fall outside their scope of employment, and thus fall outside the purview of the GTCA. *See* Hall v. Okla. Dep't of Human Servs., No. 15-CV-670-CVE-TLW, 2016 WL 2903266 at *9 & n.1 (N.D. Okla. May 18, 2016) ("It is settled that intentional torts are outside the scope of employment[.]") (*quoting* Jackson v. Okla. City Pub. Schs., 2014 OK CIV APP 61, ¶ 9, 333 P.3d 975, 978-79); *see also* 51 O.S. § 152(14). Title 12, Section 95 of the Oklahoma Statutes prescribes the limitations period for intentional tort claims— including defamation and assault—and provides in relevant part:

> Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have

**072**

accrues, and not afterwards: . . . **Within one (1) year: An action for libel, slander, assault, battery,** malicious prosecution, or false imprisonment . . .

12 O.S. § 95(A)(4) (emphasis added). Plaintiffs' allegations relating to their defamation and assault claims do not allege any actionable conduct within one year of the filing date of this action. The incidents plaintiffs describe as involving defamation by Anderson occurred in late-September or early-October of 2022. The incidents they describe as involving defamation and assault by Blair occurred in mid-October of 2022. Plaintiffs' defamation and assault claims, filed April 23, 2024, are thus outside the statute of limitations and must be dismissed as a matter of law.

### B.  COUNT TEN | NEGLIGENCE AND NEGLIGENT SUPERVISION

In Count Ten, plaintiffs allege that TPSD and the Board Members breached their duty to exercise reasonable care in controlling the conduct of their agents so as to prevent harm to J.S. by (1) failing to reasonably train, supervise, and discipline McClain; (2) failing to foster an environment, policy, and culture wherein reports of bullying, harassment, and/or unwanted sex-oriented activity are encourages; and (3) failing to institute any policies or procedures compliant with Title IX; (4) failing to implement or enforce any general policy concerning bullying. [Doc. 93, ¶¶ 292-93]. They also allege that TPSD and the Board Members at all times knew of the need to exercise control over their employees, had the ability to do so, and breached their duty to protect J.S. from the known risk of harassment by McClain. [*Id.* ¶¶ 294-96].

**073**

### 1. Negligence Claims Against the Board Members

The Board Members contend that plaintiffs' negligence claims should be dismissed because any challenged conduct by them as individual school officials were performed in the scope of their employment. [Doc. 100 at 35]. The court finds, however, that dismissal of the negligence claims against the Board Members is not appropriate at this stage. *See e.g.,* Tuffy's , Inc. v. City of Okla. City, 2009 OK 4, ¶ 8, 212 P.3d 1158, 1163 ("Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee acted within the scope of employment at any given time is a question for the trier of fact."); Trant v. Oklahoma, 874 F.Supp.2d 1294, 1307 (W.D. Okla. Mar. 19, 2012) (rejecting GTCA immunity argument where plaintiff alleged malicious, bad faith action). Indeed, the SAC pleads facts asserting the Board Members acted intentionally, recklessly, or beyond the duties of their office. *See* [Doc. 93, ¶¶231, 285, 294]. The court finds plaintiffs have stated plausible negligence claims against the Board Members. The court accordingly denies the Board Members' Motion as to Count Ten.

### 2. Negligence Claims Against TPSD

TPSD argues that plaintiffs' claims for negligence and negligence *per se* are barred by exemptions from liability under the GTCA and are, therefore, subject to Rule 12(b)(6) dismissal. [Doc. 100 at 27]. Plaintiffs concede the school district cannot be held liable for negligence involving certain "policy-level" discretionary functions under 51 O.S. § 155(5), or for its actions adopting legally insufficient anti-bullying and Title IX policies under 51 O.S. § 155(4). According to plaintiffs, however, the

**074**

negligence claims against TPSD are not premised on these exempted policy-level or "discretionary" functions. Such claims are instead premised on "TPSD's failure to properly implement" its deficient policies—which is not exempted by § 155(5) of the GTCA. [Doc. 105 at 29].

Given that the discretionary function exemption is to be construed narrowly and "do[es] not apply to tortious acts of government servants in the daily implementation of policy," State ex rel. Okla. Dep't of Pub. Safety v. Gurich, 2010 OK 56, ¶ 11, 238 P.3d 1, 4, the court is not persuaded that dismissal of this aspect of the negligence claim against TPSD is warranted at this stage. Indeed, once a school district is notified of complaints of misconduct and decides to respond, it must proceed in its work with reasonable care and in a non-negligent manner. *See* Najera v. Indep. Sch. Dist. of Stroud No. 1-54 of Lincoln Cty., 60 F.Supp.3d 1202, 1206 (W.D. Okla. Oct. 7, 2014). Plaintiffs have included sufficient factual content from which it can be plausibly inferred that TPSD's purported response to complaints of misconduct involved the negligent performance of a policy as opposed to a discretionary act of policymaking. The court accordingly denies TPSD's Motion as to Count Ten.

## C. COUNT THIRTEEN | GENDER DISCRIMINATION

Oklahoma House Bill 1775 (the "Act" or "HB 1775") was signed into law on May 7, 2021. The Act, codified in 70 O.S. § 24-157, and its implementing regulations, codified in Oklahoma Administrative Code ("OAC") 210:10-1-23, prohibit the training or teaching of specified subjects in Oklahoma schools. In the present case, plaintiffs allege the moving defendants "required or made part of [their] teaching or coursework

45

**075**

discriminatory principles" prohibited by 70 O.S. §§ 24-157(B)(1)(a), (c), (e), and (g).[11]

[Doc. 93, ¶ 334]. The moving defendants argue Count Thirteen is subject to dismissal

under Rule 12(b)(6) because there is no private right of action for violation of  HB

1775, and because the complained-of conduct occurred before the implementing

regulations went into effect. [Doc. 100 at 32]. According to plaintiffs, however, HB

1775 creates an implied private right of action. [Doc. 105 at 29].

Under Oklahoma law, a private right of action can be implied from a public-

law statute if the following elements are met: (1) the plaintiff is of the class for whose

benefit the statute was created; (2) some indication of legislative intent, explicit or

implicit, suggests that the Legislature intended to create a private remedy, rather

than deny the same; and (3) implying a remedy for the plaintiff would be consistent

with the underlying purpose of the legislative scheme. Owens v. Zumwalt, 2022 OK

14, ¶ 10, 503 P.3d 1211, 1215. The moving defendants only dispute plaintiffs' ability

to meet the second element. In evaluating the second prong, courts must determine

legislative intent by "looking at the precise wording of the [statute] and studying its

history." Holbert v. Echeverria, 1987 OK 99, ¶ 11, 744 P.2d 960, 964.

The court finds no legislative intent, either implied or explicit, in HB 1775 to

create a private remedy for violations of said statute. Rather, the Act is a legislative

grant of authority to the Oklahoma State Board of Education ("OSBE") to

---

[11] The Oklahoma Attorney General and his office are presently enjoined from enforcing certain portions of HB 1775. See Black Emergency Response Team v. Drummond ("Black"), 737 F.Supp.3d 1136 (W.D. Okla. June 14, 2024). This preliminary injunction effects one of the four provisions on which plaintiffs rely—i.e., "[n]o teacher . . . shall require or make part of a course" the concept that "an individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex[.]" 70 O.S., § 24-157(B)(1)(c); Black, supra, at 1157. See [Doc. 93, ¶ 325].

"promulgate rules" and "implement the [Act's] provisions." *See* 70 O.S. § 24-157(B)(2). The penalties set out for violation of the Act are administrative. *See* OAC 210:10-1-23(j). Both state and federal courts have held the second prong unsatisfied where a statute granted regulatory authority to an administrative agency rather than explicitly creating a private right of action within the statute itself.[12] Plaintiffs nevertheless contend that, in exercising its authority to promulgate rules under the Act, the OSBE recognized a private right of action in March of 2022:

> Title VI and Title IX may be enforced by private right of action, whereby aggrieved parties may seek relief, including monetary damages, for violations of federal antidiscrimination laws. Victims of discrimination may file a lawsuit directly against the Public School. In addition to any private rights of action, aggrieved parties may seek applicable remedies through the U.S. Department of Education's Office for Civil Rights or the U.S. Department Justice's Civil Rights Division.

[Doc. 105 at 30 (*citing* OAC 210:10-1-23(o))]. The moving defendants further argue the implementing regulations were not in force at the time they allegedly violated the Act. Indeed, the pertinent regulations went into effect on September 11, 2022. *See* 39 Okla. Reg. 992, 2022 OK REG TEXT 603412 (NS). According to the moving defendants, the underlying conduct which plaintiffs claim violated HB 1775 occurred in August of 2022. [Doc. 93, ¶¶ 31-106]. According to plaintiffs, such underlying conduct spanned from mid-August 2022 to mid-October 2022. [Doc. 100 at 31 (*citing*

---

[12] *See e.g.*, Nichols Hills Physical Therapy v. Guthrie, 1995 OK CIV APP 97, ¶ 9, 900 P.2d 1024, 1026 ("Had the legislature intended to provide an injured patron with the right of private action . . . it would have explicitly done so."); Thomas v. Metro. Life Ins. Co., 540 F.Supp.2d 1212, 1230 (W.D. Okla. Jan. 10, 2008) ("When a statute grants enforcement authority to an administrative agency or officer, this grant implies the legislature did not intend to provide a private right of action."); Risk v. Allstate Life Ins. Co., No. 4-CV-333-CVE-FHM, 2006 WL 2021597 at *3 (N.D. Okla. July 17, 2006) ("In terms of statutory construction, the inclusion of administrative enforcement impliedly excludes a private right of action.") (*citing* Holbert, ¶¶ 15-16, 744 P.2d at 965).

Doc. 93, ¶¶ 133, 138, 141, 153-60)]. The portions of the SAC to which plaintiffs cite set forth allegations that the Title IX investigation was closed on September 17, 2022; OSBE sent TPSD notice to end its segregation policy on September 29, 2022; OSBE's letter directed that TPSD integrate fifth-grade classes at Talihina Elementary by October 10, 2022; and J.S. returned to his first full day of in-class instruction on October 12, 2022.

The court agrees with the moving defendants that "[n]one of these alleged events involved a [TPSD] employee allegedly 'requir[ing] or mak[ing] part of a course' one or more of the concepts prohibited by HB 1175 or its regulations." [Doc. 111 at 9 (*quoting* 70 O.S. § 24-157(B)(1))]. To the extent the Act provides for an implied private right of action against employees of a school district, plaintiffs' claim for violation of HB 1775 against the moving defendants fails because the implementing regulations went into effect *after* their purported violation of the Act. The moving defendants' request for Rule 12(b)(6) dismissal of Count Thirteen is therefore granted.

### D. COUNT FIFTEEN | CIVIL CONSPIRACY

According to the Oklahoma Supreme Court, the tort of civil conspiracy

> . . . consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. There can be no civil conspiracy where the *act* of and the *means employed* are lawful.

Brock v. Thompson, 1997 OK 127, ¶ 38, 948 P.2d 279, 294 (footnotes omitted) (emphasis in original). Here, the parties dispute whether plaintiffs have or can plead facts demonstrating the existence of an "unlawful act." Under Oklahoma law, it is not

necessary that the unlawful act be a criminal act. However, it must be an act which would in itself give rise to tort liability. *See* <u>Gaylord Entm't Co. v. Thompson</u>, 1998 OK 30, ¶ 40, 958 P.2d 128, 148 ("In order to be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means.").

The court finds that plaintiffs have pled facts which could give rise to a tort committed by one or more defendant. The following individual defendants are alleged to have entered into agreements under Count Fifteen: Anderson and Lockhart [Doc. 93, ¶ 350]; Anderson and Russell [*Id.* ¶ 351]; Anderson, Lockhart, Russell, Blue, Crank, Moreland, and Woods [*Id.* ¶ 352]; Bryant and Blair [*Id.* ¶ 353]. The SAC further alleges that those individual defendants agreed "to segregate Talihina Elementary's fifth grade class based on sex, in violation of federal and state law" and/or "*not* to cooperate or to interfere with the Title IX investigation undertaken by Talihina Elementary officials." [Doc. 93, ¶¶ 356-57]. Plaintiffs' allegations are sufficient to state a claim for civil conspiracy under Oklahoma law; therefore, Count Fifteen will survive the moving defendants' dismissal challenge.

## VI. LIMITATION OF DAMAGES

TPSD contends punitive damages are not available for plaintiffs' claims arising under Title IX, § 1983, or the GTCA. [Doc. 100 at 44-45]. Plaintiffs concede to this contention as it applies to TPSD but argue against dismissal of their requests for punitive damages against the individual moving defendants. [Doc. 105 at 32]. It is well-settled that punitive damages are not available under § 1983 against governmental entities or individuals acting in their official capacities. *See* <u>Brandon</u>

49

**079**

v. Holt, 469 U.S. 464 (1985); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Punitive damages are also unavailable under Title IX. *See* Cummings v. Premier Rehab Keller, PLLC, 596 U.S. 212 (2022) (holding punitive damages are not available in Title IX private rights of action against recipients of federal financial assistance for discriminating based on protected characteristics). As for plaintiffs' state law claims, the GTCA expressly provides that punitive damages may not be recovered against a political subdivision such as TPSD. *See* 51 O.S. § 154(C). As a matter of law, TPSD is immune from liability for punitive damages on plaintiffs' claims arising under Title IX, § 1983, and the GTCA.

## VII.  CONCLUSION

Based on the foregoing, the moving defendants' Motion [Doc. 100] is **GRANTED in part** and **DENIED in part**. Following entry of this Order, the status of each operative claim asserted in the SAC against these defendants is as follows:

- Count One alleging a Title IX gender discrimination claim remains pending against TPSD.

- Count Two alleging a Title IX sexual harassment claim remains pending against TPSD.

- Count Three alleging a Title IX retaliation claim remains pending against TPSD.

- Count Four alleging a § 1983 municipal liability claim based on violation of J.S.'s constitutional right to equal protection remains pending against TPSD. The alleged due process violations underlying Count Four are dismissed for failure to state a claim against TPSD.

- Count Five alleging § 1983 supervisory liability claims based on violations of J.S.'s constitutional rights to equal protection and procedural due process remain pending against Anderson, Blue, Crank, Lockhart, Moreland, Russell and Woods in their individual capacities. The alleged substantive due process violations underlying Count Five are dismissed for failure to state a claim against the Count Five defendants.

- <u>Count Six</u> alleging a § 1983 retaliation claim based on violation of the First Amendment remains pending against Anderson, Blair, and Bryant in their individual capacities.

- <u>Count Seven</u> alleging a § 1983 conspiracy claim based on violations of plaintiffs' constitutional rights to equal protection and procedural due process remains pending against TPSD as well as Anderson, Blue, Crank, Lockhart, Moreland, Russell and Woods in their individual capacities. The alleged substantive due process violations underlying Count Seven are dismissed for failure to state a claim against TPSD and those individual defendants in their personal capacities. Moreover, Count Seven is dismissed for failure to state a claim against Blair and Bryant in their individual capacities.

- <u>Count Nine</u> alleging a § 1983 retaliation claim based on violation of the First Amendment remains pending against TPSD as well as Blue, Crank, Lockhart, Moreland, Russell, and Woods in their individual capacities.

- <u>Count Ten</u> alleging claims for negligence, negligent supervision, and negligence *per se* remain pending against TPSD, Blue, Crank, Lockhart, Moreland, Russell, and Woods.

- <u>Count Twelve</u> alleging defamation claims are dismissed for failure to state a claim against Anderson and Blair within the one-year limitations period provided by 12 O.S. § 95(4).

- <u>Count Thirteen</u> alleging violations of HB 1775's prohibition against gender discrimination in public education is dismissed for failure to state a claim against TPSD, Anderson, Blair, and Lockhart.

- <u>Count Fourteen</u> alleging an assault claim is dismissed for failure to state a claim against Blair within the one-year limitations period provided by 12 O.S. § 95(4).

- <u>Count Fifteen</u> alleging a civil conspiracy claim under Oklahoma law remains pending against each moving defendant.

- Plaintiffs' prayer for punitive damages is stricken insofar as it relates to TPSD (Counts One, Two, Three, Four, Nine and Ten) and remains pled insofar as it relates to the individual moving defendants.

**IT IS SO ORDERED** this 29th day of April, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

**081**